In the Matter of NEW YORK COUNTY LAWYERS' ASSOCIATION, Respondent, *v.* NORMAN F. DACEY et al., Appellants.

First Department, October 24, 1967.

*James F. Dwyer* of counsel (*Jean C. Lucas* and *Robert M. Callagy* with him on the brief; *Satterlee, Warfield & Stephens*, attorneys), for Crown Publishers, Inc., and others, appellants.

*Arthur Stephen Penn* for Norman F. Dacey and another, appellants.

*Daniel M. Shientag* for respondent.

EAGER, J. The respondents appeal from an order rendered in a proceeding brought by the New York County Lawyers' Association pursuant to subdivision B of section 750 of the Judiciary

Law to punish the respondents for contempt and for an injunction in the matter of alleged unlawful practice of law activities in the publication, distribution and sale of the book or treatise entitled "How To Avoid Probate!"

Special Term concluded that the respondent Dacey, including his doing business as National Estate Planning Council, was guilty of criminal contempt, and adjudged him guilty of such contempt in that he did "willfully and knowingly, engage in an unauthorized practice of law within the State of New York". The order of Special Term further provided that Dacey and the respondents Crown Publishers, Inc., Doubleday & Co. Inc. and Brentano's Inc. (the publishers, distributors and sellers of the book) should be permanently enjoined from "[p]racticing or assuming to practice law in the State of New York, directly or indirectly"; from "[r]epresenting or holding themselves out to the public of the State of New York, as being authorized, qualified or competent to give legal advice or render legal opinions to the public"; from "[r]endering opinions, representing, advising or recommending to the public in the State of New York, in any manner or in any media, distributed, disseminated, published or broadcast to, or intended to reach, residents of the State of New York, orally, in writing, or by mechanical, electronic or electro-magnetic devices, reproductions, records or recording devices intended to reproduce voices, writings, pictures, or any combination thereof, directly or indirectly, that any ' form ', writing, instrument, or document, directed, designed, written or printed by the respondents, or any of them, or any other person   *   *   *   is legally sufficient, suitable or proper for use for any specific legal purpose, or will create, or abrogate any jural relationship or effect any transfer of property"; from "[i]nstructing, advising, or recommending to residents of the State of New York with respect to the manner and method in which any ' form ', writing, instrument or document is to be prepared, completed, executed, witnessed, filed, or recorded, or otherwise treated or dealt with for the purpose of effecting a legally sufficient transfer of specific property or establishing a specific jural relationship"; and from "[o]ffering for sale, selling, distributing, or disseminating ' forms ', writings, instruments or documents under such circumstances or in such a manner as would imply to or cause a resident of the State of New York to believe that such ' form ', writing instrument or document was represented to be legally sufficient or proper for use for the purpose of effecting a transfer of specific property, or creating or abolishing a specific jural relationship".

Although we agree in the main with the reasoning and conclusions of Special Term as set forth in its well-written opinion, we conclude that the injunctive provisions of its judgment, insofar as they are directed against respondents other than Dacey, are too broad and sweeping in their terms and should be modified.

Dacey is not an attorney admitted to practice law. Nevertheless, on the basis of the undisputed facts, it appears that he planned to and did deliberately engage in activities constituting the practice of law in this State. Prior to his activities in New York, Dacey had written and distributed in the State of Connecticut a 30-page booklet describing and recommending the so-called "Dacey Trust" and "Dacey Will". He met with those who were interested in his advice and assisted them in executing trust and will forms prepared and supplied by him. On the basis of his conduct in Connecticut, Dacey was enjoined by the court therein from engaging in the drafting and/or preparation of wills, trusts, trust agreements and similar documents and/or advising and counseling any person concerning the same or the effects thereof and the laws applicable thereto. (See *Grievance Committee of Bar of Fairfield County* v. *Dacey*, 154 Conn. 129, 222 A. 2d 399, rehearing den. 387 U. S. 938.) Having been enjoined from his unlawful practices in Connecticut, Dacey offered for publication in this State the book and forms entitled "How To Avoid Probate!" Although there are no face-to-face meetings with customers or book purchasers here, this work and Dacey's activities in connection therewith were intended to and do serve as a large-scale expansion of the Connecticut booklet and operations. Clearly, it was Dacey's purpose to circumvent the effect of the Connecticut decree by substituting here a multiplicity of forms of legal instruments with particularized instructions as to each form so that they could be used on the basis of his written rather than face-to-face oral legal advice.

Dacey's present work consists of approximately 55 pages of text and approximately 310 pages of forms with accompanying instructions. The work contains a total of 26 declaration and deed of trust forms, 2 deed forms, 5 revocation of trust forms, 1 form of amendment of deed of trust and 12 will forms, with all of them in duplicate. These forms, as noted in the table of contents, "are perforated for easy removal from the book". A page or more of instructions accompanies each of the forms, advising a purchaser when and how to use them, including advice as to filling in of the blanks and the proper

manner of executing and filing instruments. With each of the forms there is the general statement that it "will be suitable for use" to effect a stated jural relationship or result. There is also the general statement in the text of the book, applicable to all of the forms, that: "The instructions supplied with each instrument are quite precise. Any sensible person who reads them thoughtfully several times and checks his understanding of them with another person should have no difficulty"; that "[a]s to the forms provided in this volume * * * [t]hey are legally correct * * * and may be employed with complete assurance that they will serve the readers' purposes well".

On the front and back covers of the book Daccy is represented to be "One of American's Leading Professional Estate Planners" and "America's best-known professional estate planner." Prominently emphasized on the back cover is the direction and statement: "ADMINISTER YOUR OWN ESTATE! This book will revolutionize estate administration in America! It tells you how to avoid the delay, expense and publicity of probate of: your home . . . your bank account . . . your stocks and bonds . . . your automobile . . . your close corporation . . . your mutual fund shares . . . your small unincorporated business . . . your personal effects." On the whole, the book is represented and purports to be a compilation of instructions and legal counsel by Mr. Daccy, a nonlawyer.

The giving of legal advice and counsel, including instructions and advice as to the preparation and use of legal instruments, constitutes the practice of law which is forbidden in this State to all but duly licensed New York attorneys. This is well settled. (See Penal Law, §§ 270, 271, 280, subd. 3; 3 N. Y. Jur., Attorney and Client, § 1; *Spivak* v. *Sachs,* 16 N Y 2d 163, 166–167.) "Protection of the members of the lay public of our State, when they seek *legal advice*—and that is what defendant purported to furnish—is the basis of the requirements of licensing of attorneys by the State, and this protection must be deemed to embrace whatever kind of law or legal rights the layman seeks advice on (see *Matter of New York County Lawyers Assn.* [*Standard Tax & Management Corp.*], 181 Misc. 632)." (*Matter of New York County Lawyers Assn.* [*Roel*], 3 N Y 2d 224, 231, app. dsmd. 355 U. S. 604.) Appropriate also is the statement in *Rosenthal* v. *Shepard Broadcasting Serv.* (299 Mass. 286, 289–290), where the court held that the radio broadcasting of legal advice constituted the unlawful practice of law, and said: "The giving of advice as to legal matters has been com-

monly recognized as an important part of the activities reserved for members of the bar and constitutes the practice of law.''

Here, Dacey prepared and drafted the many forms of legal instruments and documents contained in the book. Holding himself out as a qualified expert, he represented each form as suitable to accomplish a stated jural purpose or to effect a particular jural result, and gave specific advice as to the manner of completing, executing and filing the forms. Unquestionably, he intended that his forms and his advice be adopted and followed by laymen. This constitutes the practice of law. '' [W]hen legal documents are prepared for a layman by a person in the business of preparing such documents, that person is practicing law whether the documents be prepared in conformity with the law of New York or any other law.'' (*Matter of New York County Lawyers Assn.* [*Roel*], 3 N Y 2d 224, 229, *supra*.) '' The exercise of judgment in the proper drafting of legal instruments, or even the selecting of the proper form of instrument, necessarily affects important legal rights. The reasonable protection of those rights, as well as the property of those served, requires that the persons providing such services be licensed members of the legal profession.'' (*Cape May County Bar Assn.* v. *Ludlam,* 45 N. J. 121, 126.)

Where a person, as here, advises that this form or that form is the proper form to be used to carry out a particular legal transaction, then he is doing just what a lawyer does when a client seeks advice. The copying or completion of a form may consist merely of clerical work but the selecting of the proper form and telling a clerk what to copy and how to fill in the blanks is lawyers' work. It was stated by POUND, J., concurring in *People* v. *Title Guar. & Trust Co.* (227 N. Y. 366, 379), in reference to the supplying and preparation of forms: '' I am unable to rest any satisfactory test on the distinction between simple and complex instruments. The most complex are simple to the skilled and the simplest often trouble the inexperienced. Skill is sought when another is employed to do the work. If the blank forms used by the trust companies are prepared or approved by their legal counsel then, when the clerks fill them out, the corporation tacitly advises the client that the forms are proper and sufficient for the purpose and one would expect that he was getting good legal advice, indirectly, if he had papers thus prepared. So the giving of oral advice is not a satisfactory test.''

It is immaterial that Dacey has not face-to-face dealings nor a confidential relationship with particular clients. (See *People ex rel. Dunbar* v. *Schmitt,* 126 Col. 546; *Shortz* v. *Yetter,* 38

Pa. D. & C. 291.) He prepared and has contracted for the sale of his work with the intent and suggestion that his forms be used and his advice be followed by lay individuals in their property and estate matters. They are told that the forms therein are prepared and designed by "one of the country's leading professional estate planners" and are informed that the various deeds, trust instruments and will forms with the book may be detached and, if used in accordance with Dacey's advice, will result in arranging an individual's affairs legally with a saving of taxes and probate expense. Under these circumstances, the book is bought with the understanding that the purchaser is thereby obtaining legal counsel from an expert who is fully qualified to give the same. Dacey intends that purchasers of the book shall act on the basis of his legal advice, and, in a sense, they are solicited as his clients. And Dacey, the same as a qualified lawyer, receives a consideration for his selection of the suitable form and for his advice as to the proper completion, execution and filing of the instrument. He receives, either directly or indirecty, a portion of the price paid by each purchaser of the book. In furtherance of his intent to profit from his alleged legal expertise, there is included in each book an order form whereby the purchaser may order from Dacey, at a specified price to be paid to him, additional copies of the book and additional sets of the various forms of instruments prepared by him; each of the forms being expressly described and represented in the order form as suitable and fully effective for establishing various types of trusts, for the revocation of trusts and for the conveyancing and the testamentary disposition of property. Furthermore, unless restrained, Dacey could use his present work as a basis for a supplement service or future editions whereby he could expand the undertaking to establish a profitable counseling service to the public.

It would be senseless to permit a person who is not an attorney to engage in the business of selling and distributing particularized legal advice to the public on a wholesale basis when he would not be permitted to do so on an individual basis. Although Dacey does not hang out a shingle and have clients come to his office, he is actually engaged in the practice of giving legal counsel to all and sundry who are willing to receive the same. Under the circumstances, "we are dealing with the conduct of a person who renders legal services to the public as a business." (See *Matter of New York County Lawyers Assn. [Roel]*, 3 N Y 2d 224, 231, *supra*.) "[T]o prepare as

a business legal instruments and contracts by which legal rights are secured and to hold oneself out as entitled to draw and prepare such as a business is a violation of the law.'' (*People* v. *Alfani,* 227 N. Y. 334, 338.) Certainly, on this basis, Dacey is engaged in the practice of law, or, at the very least, he '' assumes to practice law '' (Judiciary Law, § 750, subd. B).

It would be senseless, too, to hold that the court does not have the power to control the activities of laymen in matters generally requiring the training, experience and ethical responsibility of duly qualified attorneys. The conduct of attorneys in activities concerning the law, such as the activities of Dacey, is subject to the regulation and supervision of the courts and it is nonsensical to suggest that a layman, without the qualifications of an attorney, should be permitted to carry on such activities free of the control of the court. For obvious reasons, attorneys are required to possess certain educational qualifications and training, must pass a Bar examination, are required to be of good character and fitness, and are required to be licensed. Then they are required to maintain standards prescribed by the courts and the Bar and are subject to discipline for breach of such standards. '' And all of this with but one purpose in view and that to protect the public from ignorance, inexperience and unscrupulousness.'' (*People* v. *Alfani, supra,* p. 339.) Although a layman may have sufficient knowledge to give advice in a special branch of the law, learning alone does not properly qualify him to '' set himself up as a public consultant on the law of his specialty.'' (See *Matter of New York County Lawyers Assn.* [*Bercu*], 273 App. Div. 524, 534, affd. 299 N. Y. 728.)

Dacey concedes '' that a carelessly-drawn instrument can have *very* harmful results.'' One can readily see that inaccurate, incomplete or unsupervised advice in this '' do it yourself kit '' as to the proper completion, execution or filing of an instrument may indeed cause '' very harmful results.'' In many cases, this book may be the direct cause of unnecessary expense and costly future litigation in the settling of estates rather than a means whereby a purchaser can '' arrange [his] affairs * * * legally, and at no cost '' as advertised. Yet there is no way for the courts to regulate or control Dacey's conduct except to restrain his activities.

It is immaterial that Dacey '' renders only specialized services '', namely, in the matter of the preparation of legal forms and documents and advice as to their use for *inter vivos* or *post mortem* disposition of property, and it is likewise imma-

terial that "he claims to be peculiarly competent" in the field. "A specialized area of competence does not, however, entitle these laymen to engage in the business of giving legal advice based on their knowledge of the subjects." (*Matter of New York County Lawyers Assn.* [*Roel*], *supra,* p. 231.)

Although there is no difficulty in concluding that Dacey is engaged in the unlawful practice of law, it does not necessarily follow that the activities of the respondents Crown Publishers, Inc., Doubleday & Co. Inc. and Brentano's Inc., in relation to the Dacey work, are such as to subject them to the usual form of general restraint in these matters. It is clear, however, that the punishing of Dacey for contempt and the issuance of an injunction solely as against him would be wholly ineffective to put a stop to the unlawful practices if these other respondents were permitted to continue with the distribution and sale of the objectionable material. Certainly, under the circumstances, this court is not powerless to render such decree as may be proper and necessary to stop the unlawful activities instigated and abetted by respondent Dacey.

There is no inherent right to practice law and the State has the power to prescribe the qualifications of and to license those who may practice law and prohibit others from doing so. (See *Matter of New York County Lawyers Assn.* [*Roel*], 4 Misc 2d 728, 731, affd. 3 A D 2d 742, affd. 3 N Y 2d 224, app. dsmd. 355 U. S. 604; *Sweeney* v. *Canon,* 23 A D 2d 1.) This State has vested the Supreme Court, including the Appellate Division, with the general jurisdiction to exercise the powers of the State in the matter of the control and regulation of the practice of law. It is expressly provided that "The supreme court shall have power and control over * * * all persons practicing or assuming to practice law" (Judiciary Law, § 90, subd. 2). The court is expressly authorized to punish for a criminal contempt "any person who unlawfully practices or assumes to practice law" (Judiciary Law, § 750, subd. B). Included within the powers conferred upon it is the power to enjoin by its decree the unlawful practice of law activities in the State. (See *Matter of New York County Lawyers Assn.* [*Bercu*], *supra*; *Matter of New York County Lawyers Assn.* [*Roel*], 3 A D 2d 742, *supra*.) It reasonably follows that the court, where necessary for the protection of the public, may restrain any person who participates in or furthers such activities.

We recognize, of course, that the respondents have the right guaranteed by the Federal and State Constitutions to publish, distribute and sell Dacey's views and opinions with respect to

probate procedure, with incidental criticism of the legal profession and its methods. In this connection, it is immaterial whether or not Dacey's advice or conclusions are sound or valid; and this court may not suppress the dissemination of the same because it disagrees with or dislikes his views. In fact, the petitioning Bar Association concedes that the court may not restrain the publication, distribution and sale of the Dacey text and forms as an undertaking independent of unlawful practice of law activities.

It appears beyond dispute, however, that the respondent book publishers, distributors and sellers are deliberately promoting the exploitation and dissemination of the counsel of a nonlawyer as the sound and proper legal advice of one particularly qualified to render such advice. They have advertised and are exploiting the work as the manual of an expert enabling the purchasing layman to effect transfers of various properties, make gifts, create trusts, and execute wills by following the advice and using the forms set forth in the book. In their advertisements, the purchasing layman is advised that this is a " ' do it yourself kit ' for legal, proper estate administration " including forms of necessary instruments prepared by a " leading professional estate planner " and that the purchaser of the work " get[s] detailed instructions for completing each instrument, plus a picture of how it should look when you finish it." The advertisements stress the fact that Dacey " believes that any literate, intelligent man or woman who can follow his book's clearly outlined directions, will surely be capable of handling his or her estate." By their manner of promoting the sale of Dacey's work, these respondents are actively engaged in furthering his unlawful activities.

The constitutional rights of the respondents should not operate to bar the issuance of a properly limited injunction restraining the unlawful undertaking represented by the particular publication. Legal advice is not a constitutionally protected matter and one illegally peddling such advice may not take refuge in the constitutional guarantees of freedom of expression.

Concededly, rights of speech and publication are not absolute and, in a given case where the public interest is involved, we are entitled " to strike a balance  *  *  *  between these fundamental freedoms and the State's interest in the welfare of its citizens." (See *People* v. *Fritch,* 13 N Y 2d 119, 123.) Where, as here, a proper statute is enacted in the interests of public welfare (Judiciary Law, § 750, subd. B), for the purpose of curtailing the practice of law by unqualified and unlicensed persons, and there is an overriding need for resort to the powers

conferred by the statute upon the court, the respondents' general rights grounded in the constitutional guarantees of freedom of expression must yield to permit the rendition of such decree as is necessary for the protection of the public. (See 9 N. Y. Jur., Constitutional Law, § 214; *Gitlow* v. *New York,* 268 U. S. 652, 666–668; *Near* v. *Minnesota,* 283 U. S. 697, 708; *Curtis Pub. Co.* v. *Butts,* 388 U. S. 130, 150; *Ginzburg* v. *United States,* 383 U. S. 463, 474, 475.)

The judgment of Special Term should be affirmed as to respondents Norman F. Dacey and Norman F. Dacey doing business as National Estate Planning Council, with costs and disbursements to the petitioner. Under the circumstances, however, the terms of the judgment of the court insofar as it is directed against the respondents book publishers, distributors and sellers should be limited to the enjoining of the acts and conduct on their part tending to promote the unlawful practice of law by Dacey in this State. Therefore, the injunctive provisions of said judgment, as affecting the respondents Crown Publishers, Inc., Doubleday & Co. Inc. and Brentano's Inc. should be modified to restrain them from the further publication, advertisement, distribution and sale in New York of the present book "How To Avoid Probate!", and of any modification thereof which purports to induce lay persons to rely upon the legal advice or expertise of Dacey in the selection, use, completion or execution of legal forms, instruments or writings for the purpose of establishing any jural relationship or effecting the transfer or disposition of property; and said judgment should otherwise be affirmed as to said last-named respondents, without costs and without disbursements.

STEVENS, J. P. (dissenting). I dissent, vote to reverse and dismiss the petition.

This is an appeal from an order and decree entered September 12, 1967 adjudging appellants Norman F. Dacey and Norman F. Dacey doing business as National Estate Planning Council, guilty of criminal contempt of court by reason of the unauthorized practice of the law. Dacey was fined $250 and upon default in payment was to be committed for 30 days. Special Term also found appellants Crown Publishers Inc., Doubleday & Co., Inc. and Brentano's Inc. were likewise engaged in the unauthorized practice of law. They, however, were not held in criminal contempt. All were enjoined from continuation of certain acts as set forth in the order and decree.

In 1965 Norman F. Dacy (Dacey) drafted and prepared a series of forms of various instruments consisting of *inter*

*vivos* trust, wills and related documents. These forms were incorporated into a book entitled "How To Avoid Probate!" which Dacey copyrighted under the name Norman F. Dacey doing business as National Estate Planning Council, a trade name. The book itself consists of approximately 55 pages of text and approximately 310 pages of forms. The petitioner, the New York County Lawyers' Association, brought a proceeding under subdivision B of section 750 of the Judiciary Law to enjoin publication of the book. That section so far as pertinent provides " [T]he supreme court has power under this section to punish for a criminal contempt any person who unlawfully practices or assumes to practice law; and a proceeding under this subdivision may be instituted on the court's own motion or on the motion of any officer charged with the duty of investigating or prosecuting unlawful practice of law, or by any bar association incorporated under the laws of this state." Therefore the petitioner is clearly entitled to bring the proceeding. Dacey, a Connecticut resident, was served in Connecticut under CPLR 302, our long-arm statute, on the theory that he allegedly committed tortious acts in New York in writing and causing the book to be published and advertised in New York. It might be noted at this point that Dacey had previously been enjoined in Connecticut (see *Grievance Committee of Bar of Fairfield County* v. *Dacey,* 154 Conn. 129, 222 A. 2d 339, rehearing den. 387 U. S. 938). That injunction was the outgrowth of a 30-page booklet written by Dacey describing a so-called "Dacey Trust", the first six pages of which contained general information about the history and uses of the *inter vivos* and testamentary trusts and tax information. The balance of the booklet was a description of the Dacey trust and its claimed advantages. The booklet was supplied to prospective customers who met with Dacey and whom he advised and supervised in the filling of the blanks in the forms, and in some instances Dacey supplied forms which varied somewhat from those in the book.

Here the claim of unauthorized practice of law rests upon the writing and publication of this book of which some 600,000 copies have been sold. Petitioner complains also of the advertising which appears on the jacket of the book. The advertising in question refers to Dacey as one of America's leading professional estate planners. The book, as the title indicates, attempts to inform the purchaser how to avoid probate.

Petitioner asserts that by the appellants' representations to the public they were selling legal advice and they were representing that Dacey was an expert qualified and compe-

tent to give such legal advice. Petitioner alleges the scheme and plan created by Dacey, and carried into effect by Crown Publishers Inc., who published the book, and Doubleday & Co., Inc. and Brentano's Inc., who sold and distributed the book, constitute the unauthorized practice of law; that Crown, Doubleday and Brentano's are equally responsible because they have been engaged in aiding and abetting the unauthorized practice of law and that an injunction may issue under subdivision B of section 750 of the Judiciary Law, which section they assert is clear and unambiguous.

Dacey contends that his acts cannot, as a matter of law, constitute the unauthorized practice of law in the absence of proof of the giving of specific advice to a specific individual about his particular problems; that the publication and distribution of a book containing forms is not the equivalent of giving specific advice to specific individuals about their particular problems, and does not constitute the unauthorized practice of law.

The defendants urge several defenses based on contentions that subdivision B of section 750 violates different articles of the Federal Constitution. In the view taken it is not necessary to consider these contentions, and attention is directed only to the question of whether the publication of this book constitutes practice of the law within the meaning of the section.

Stripped of the arguments and the contentions of the various parties, the question may be briefly and baldly expressed: Does the writing, publication, advertising, sale and distribution of "How To Avoid Probate!" constitute the unauthorized practice of law within the meaning of subdivision B of section 750? It cannot be claimed that the publication of a legal text which purports to say what the law is amounts to legal practice. And the mere fact that the principles or rules stated in the text may be accepted by a particular reader as a solution to his problem does not affect this. Courts and lawyers continuously use and cite texts for this very purpose. So also with forms. The publication of a multitude of forms for all manner of legal situations is a commonplace activity and their use by the Bar and the public is general. In fact, many statutes and court rules contain the forms to be used in connection with them. Apparently it is urged that the conjoining of these two, that is, the text and the forms, with advice as to how the forms should be filled out, constitutes the unlawful practice of law. But that is the situation with many approved and accepted texts.

Dacey's book is sold to the public at large. There is no personal contact or relationship with a particular individual, Nor does there exist that relation of confidence and trust so necessary to the status of attorney and client. This is the essential of legal practice — the representation and the advising of a particular person in a particular situation. The lectures of a law school professor are not legal practice for the very reason that the principles enunciated or the procedures advised do not refer to any activity in immediate contemplation though they are intended and conceived to direct the activities of the students in situations which may arise. Moreover, there is no claim here as there was in the Connecticut proceeding (*Grievance Committee of Bar of Fairfield County* v. *Dacey*, 154 Conn. 129, 222 A. 2d 339, rehearing den. 387 U. S. 938) that Dacey, in effect, prepared instruments tailored to the particular needs of his customers.

Special Term referred to and placed a measure of reliance on the determination of the Connecticut court in making its own determination. In the Connecticut proceeding against Dacey it was determined that in addition to the preparation of a 30-page booklet Dacey prepared trusts and wills adapted to clients' needs providing, at the same time, for large potential profits to himself in the sale of Wellington Fund shares on which he received a 6% commission. The court declared, when Dacey prepared wills and trusts for his customers and advised, as to the desirability in their circumstances, of the specific wills or trusts so prepared for them he engaged in the illegal practice of law. Certainly that case may readily be distinguished.

At most the book assumes to offer general advice on common problems, and does not purport to give personal advice on a specific problem peculiar to a designated or readily identified person.

"How To Avoid Probate!" may be purchased by anyone willing to pay the purchase price. One is free to purchase or not as he wills. There is no personal reliance upon the selection and judgment of Dacey in the discretionary choice of a form adapted to the customer's needs.

It is recognized that rules for the admission of persons to the practice of law, and rules or canons regulating their conduct thereafter, are "to protect the public from ignorance, inexperience and unscrupulousness" (*People* v. *Alfani*, 227 N. Y. 334, 339). In this way, hopefully, the unqualified are excluded. The prohibition against the unauthorized practice

of law has a like objective. " How To Avoid Probate!" has been published and freely sold for more than one year. There is no showing in this record that this book has exploited the public or led its members astray improperly or incorrectly. In fact there is no factual evidence submitted as to the effect of the publication and sale of the book. In order to sustain petitioner's position one has to conclude that the book by its very nature comprises the unauthorized practice of law. " How To Avoid Probate!" is, in one sense, a do-it-yourself kit. To that extent it could encroach upon the preserves of lawyers, though the present record does not give evidence of that fact. Every individual has a right to represent himself if he chooses to do so, and to assume the risks attendant upon what could prove a precarious undertaking. Those of sufficient substance to require trusts or wills for the most part are persons of some common sense and, normally, would hardly be expected to rely completely and unquestioningly upon a mass-printed form, even with accompanying instructions. However, they have a right to do so.

This book was printed prior to February, 1966 by a Denver, Colorado, printer and sold over 10,000 copies. We are told that to date it has sold over 600,000 copies. There would hardly be dispute that book printing and sale per se is not the practice of law. Similarly, the printing and sale of forms, including those subject to the injunction, would not per se constitute the practice of law. What then distinguishes " How To Avoid Probate!" so as to bring it within the prohibition? With reference to the advertising and the representations which appear on the covers of the book, if such advertising be false or fraudulent the Penal Law affords a remedy (revised Penal Law, § 190.20, formerly Penal Law, § 421 *et seq.*). Of course, the fact that an act might be a violation of Penal Law would would not necessarily exclude it from consideration as a component part of an act otherwise not criminal.

Concededly the practice of law " manifestly includes the drafting of many documents which create legal rights. It does not follow, however, that the drafting of all such documents is always the practice of law " (*Oregon State Bar* v. *Security Escrows,* 233 Ore. 80, 86). " The practice of law is not confined to court work. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition, to conveyancing, the preparation of legal instruments of all kinds, the giving

of advice to clients, and in general all action taken by them in matters connected with the law '' (3 N. Y. Jur., Attorney and Client, § 1; *People* v. *Alfani*, 227 N. Y. 334, *supra*). In all the cases where there was a holding of unlawful practice of law there was some employment, express or implied, resulting either from contract, designation or assignment. (See *People* v. *Alfani, supra.*) It would seem logical that for one to be guilty of the unauthorized practice of law he must improperly or illegally have created or assumed such a relationship. That is not the situation before us.

The First and Fourteenth Amendments to the Constitution of the United States, and section 8 of article I of the Constitution of the State of New York refer to and deal with the right of freedom of speech and of the press (*Grosjean* v. *American Press Co.,* 297 U. S. 233; *Near* v. *Minnesota,* 283 U. S. 697; see, also, 4 Blackstone, Commentaries [11th ed., 1791], pp. 150–152).

With respect to the publisher and distributors, the order appealed from restrains them from practicing law or holding themselves out to be qualified to practice law. It also imposes specific restraints with respect to any '' forms '', writings or documents. Nowhere in the order is the book '' How To Avoid Probate! '' mentioned. The order imposes prior restraints, and imposes also an obligation of examination and determination with respect to printing and distribution of material which, reasonably, cannot be met. There is no precise definition or even clear indication of what material falls within the prohibited category. The publisher and distributors act at their peril in determining what does or does not contravene the terms of the order. They are, in effect, saddled with a foreknowledge of and responsibility for the contents of every book published or distributed by them. If the advertisements are false and misleading laws are available to punish and prevent their continuance. Certainly, no clear and present danger of public corruption or public misleading is shown to exist. The line between what may be characterized as '' puffing '' and intentional misleading is sometimes difficult to distinguish. But on this record I would vacate the order in its entirety as to the publishers (cf. *Smith* v. *California,* 361 U. S. 147; *New York Times Co.* v. *Sullivan,* 376 U. S. 254).

Dacey's criticism of what he considers the high cost of probate is a right of speech to which he is entitled. Of course if the exercise of Dacey's right to freedom of speech by this publication violates reasonable standards erected for the protection of

society, or of important interests of society, his right could be subordinated for the common good and the protection of the whole. In my view this book may not be so considered. The dangerous tendency or clear and present danger doctrines (see *Gitlow* v. *New York,* 268 U. S. 652; *Whitney* v. *California,* 274 U. S. 357; *Herndon* v. *Lowry,* 301 U. S. 242; *Terminiello* v. *Chicago,* 337 U. S. 1) are not here applicable. The book is not of the kind or quality to provoke disorder or incite one to public disturbance. In fact there is no substantive evil imminently threatening the public.

That it is not palatable to a segment of society which conceives it as an encroachment of their special rights hardly justifies banning the book. "[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions" (*Bridges* v. *California,* 314 U. S. 252, 270). Free and open discussion or even controversy could lead to reforms, if needed, or improvement where desirable. Books purporting to give advice on the law, and books critical of law and legal institutions have been and doubtless will continue to be published. Legal forms are available for purchase at many legal stationery stores. Unless we are to extend a rule of suppression beyond the obscene, the libelous, utterances of or tending to incitement, and matters similarly characterized, there is no warrant for the action here taken.

The order appealed from should be vacated on the law and the petition dismissed, without costs.

CAPOZZOLI, TILZER and McNALLY, JJ., concur with EAGER, J.; STEVENS, J. P., dissents in opinion.

Judgment affirmed as to respondents Norman F. Dacey and Norman F. Dacey doing business as National Estate Planning Council, with $50 costs and disbursements to the petitioner. Under the circumstances, however, the terms of the judgment of the court insofar as it is directed against the respondents book publishers, distributors and sellers is limited to the enjoining of the acts and conduct on their part tending to promote the unlawful practice of law by Dacey in this State. Therefore, the injunctive provisions of said judgment, as affecting the respondents Crown Publishers, Inc., Doubleday & Co. Inc. and Brentano's Inc. are modified to restrain them from the further publication, advertisement, distribution and sale in New York of the present book "How To Avoid Probate!", and of any modification thereof which purports to induce lay persons to rely upon the legal advice or expertise of Dacey in the selection, use, completion or execution of legal forms, instruments or writ-

ings for the purpose of establishing any jural relationship or effecting the transfer or disposition of property; and said judgment is otherwise affirmed as to said last-named respondents, without costs and without disbursements.

Settle order on notice.