Argued March 5, decree modified August 7, 1975

# OREGON STATE BAR, *Respondent, v.* GILCHRIST ET AL, *Appellants.*

538 P2d 913

*John Bassett,* Milwaukie, argued the cause and filed a brief for appellants.

*Barry P. Caplan,* Portland, argued the cause for respondent. With him on the brief were Daniel C. Ellis, Garry L. Kahn and Gino G. Pieretti.

McALLISTER, J.

The plaintiff, Oregon State Bar, brought this suit to enjoin the defendants John W. Gilchrist, Robert J. Lavorato and Bev Coloma from practicing law through the advertising and sale of do-it-yourself divorce kits. Defendant Bev Coloma consented to the entry of a decree against her as prayed for in the complaint and is not a party to this appeal. From an adverse decree the defendants Gilchrist and Lavorato appeal.

The defendants John W. Gilchrist and Robert J. Lavorato, neither of whom are licensed to practice law, own and operate a business known as the Oregon Divorce Council. Their business consists of the sale of do-it-yourself divorce kits containing a manual for divorce, forms and instructions designed to enable an individual to complete and file the forms necessary to secure a dissolution of marriage.

The kit includes (a) a petition for dissolution of marriage; (b) a summons; (c) a marital settlement agreement; (d) an order of default; (e) an affidavit of non-military service; (f) a decree of dissolution of marriage; and (g) a manual for divorce which explains the forms and instructs the customer how to use them.

The manual uses as an illustration the hypothetical case of Mary Jane Doe v. John Robert Doe. A sample passage of the manual reads:

## "MARY DOE PREPARES THE PETITION TO DISSOLVE THE MARRIAGE

"In their determination to proceed with as little cost as possible, John and Mary called the OREGON DIVORCE COUNCIL for information as to the functions of the Council in assisting people to obtain a divorce representing themselves.

"Securing an appointment, they met with the Council's Executive Director, Jack Gilchrist, at which time the couple was informed of the functions of the Council and what would transpire in their proceedings for a divorce.

"Director Gilchrist explained in depth the cost factors involved, what sequence of order the divorce action would follow in the court, and what was expected of each party. Moreover, John and Mary were instructed as to properly completing the 'Marital Settlement Agreement' and the need for such an agreement to simplify the divorce proceedings. The Director further explained the advantage of Mary being the petitioner and to that end, Jack agreed.

"After registering with the Council as a new member Mary was given a 'PORTFOLIO' that contained all of the procedural information necessary to obtain the divorce, plus all of the official court forms that would be needed.

"Taking the 'PORTFOLIO' home, Mary, with the help of John began preparing the petition and summons, the first forms to be filed with the court in order to start the action. Starting with the Petition, Mary completed the statistical information requested, including the information regarding son, John's, birthdate, age and address. After completing both pages of the petition, Mary attached

to the petition, their 'Marital Settlement Agreement'.

"(FOR THOSE OF YOU WHO ARE NOT ABLE TO AFFECT [SIC] AN AGREEMENT WITH YOUR SPOUSE, WE HAVE PRINTED SAMPLE ORDERS ON THE PETITION AND DECREE FOR YOUR USE, SUBSTITUTE YOUR OWN INFORMATION FOR THAT CONTAINED IN THE SAMPLE ORDERS.)"

The defendants maintained an office in Portland and obtained most of their customers by advertising in newspapers and other publications, of which advertising the following are examples:

"D· I V O R C E
JOIN THE THOUSANDS OF PEOPLE WHO HAVE BEEN SUCCESSFUL IN SECURING THEIR OWN NON-CONTESTED DIVORCE.

*OREGON DIVORCE COUNCIL*
235-2511 OR 222-9478
3823 S.E. Belmont, Portland, Oregon"

"DIVORCE
Join the many people receiving qualified confidential counseling in non-contested divorce. Oregon Divorce Council, 3823 SE Belmont, Portland, Call 9 am to 5 pm weekdays, Portland, ............... ................................ 235-2511"

"SELF DIVORCE
WHY CHANCE IT? PLACE YOUR FUTURE WITH A NATIONALLY RECOGNIZED FIRM. MONEY BACK GUARN. LEGAL. CALL:
235-2511, 9AM to 7PM
3823 SE BELMONT"

Defendants' basic charge for their kit was $40, but for an additional fee of $15 defendants would complete the forms with information furnished by the customer in a written questionnaire or in a personal interview. Over a period of two years and three months defendants had an estimated 1300 to 1500 customers, about one-half of whom used defendants' "typing service."

After the forms were filled out the customers were on their own to sign, verify and file the documents, arrange for service of process on the other spouse and present their case to the court in order to obtain a decree of dissolution of the marriage.

The trial court concluded that all of defendants' activities constituted the practice of law and entered a decree enjoining the activities of the defendants as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT THE DEFENDANTS AND EACH OF THEM ARE PERMANENTLY RESTRAINED AND ENJOINED FROM:

"1. Advising or instructing purchasers of forms by written example or otherwise regarding the use or appropriateness of said forms to accomplish particular legal results in divorce proceedings.

"2. Selling or providing forms, documents, kits, packages, booklets, printed instructions or the like in any combination designed and compiled for the purpose of terminating a marriage, settling property rights between married persons, determining child custody, or determining support or visitation rights.

"3. Representing to any person or persons either expressly or impliedly that forms which defendants have available for sale are in any combination sufficient to terminate a marriage, settle property rights between married persons, determine child custody, support or visitation.

"4. Advertising by any means or media the availability for sale of forms, documents, kits, packages, booklets, printed instructions, or the like in any combination as sufficient to terminate a marriage, settle property rights between married persons, determine child custody, support or visitation.

"5. Advertising by any means or media the availability for sale of forms, which advertisements expressly or impliedly represent that the forms which defendants have available for sale are sufficient to terminate a marriage, settle property rights between married persons, determine child custody, support or visitation.

"6. Suggesting contents of child custody, property settlement agreements entered into by the parties to a divorce or aiding said parties in wording a child custody or property settlement agreement or a decree incorporating a negotiation of child custody, support, visitation, or the property rights of the parties.

"7. Questioning prospective customers by form or otherwise in order to acquire information necessary to the drafting, filling out or choice of such forms, and

"8. Carrying on any activity which will aid and abet defendants in the violation of items 1 through 7 of this decree."

■ The defendants assign as error the denial of their motion for an involuntary nonsuit. Since this is a suit in equity and a nonsuit may only be granted in actions at law, we need not concern ourselves with this assignment of error.

The defendants concede that when they were interviewing customers, answering their questions, recommending forms to be used by particular customers and helping them to complete the forms and in any way counseling with customers, they were en-

gaged in the practice of law. In their brief defendants concede:

"While this court may find that the defendants did have personal contact with their customers and may have answered questions which constituted the giving of legal advice, any such legal advice by defendants should be enjoined, but the writing, advertising and sale of the forms and written instructions should not be enjoined."

■ Defendants' basic contention is stated in their brief as follows:

"While this court may enjoin the defendants from acting in an advisory capacity to its customers in recommending or designing completed forms, the writing, advertising and sale of forms in combination with a text of material relating to the completion of those forms which text is impersonal and involves nothing discretionary between defendants and customers should not be enjoined and the trial court decree should be modified in accordance therewith."

We believe that paragraph 2 of the decree unduly restricts the activities of the defendants and cannot be sustained. In our view defendants cannot be enjoined from merely publishing or selling their divorce kits so long as the defendants have no personal contact with their customers.

We find persuasive the holding in *New York County Lawyers' Association v. Dacey,* 28 AD2d 161, 283 NYS2d 984, reversed 21 NY2d 694 (1967). There it was held that the publication, distribution and selling of Norman F. Dacey's book "How to Avoid Probate" did not constitute the practice of law since the publication was directed to the general public and not to a specific individual. The dissenting opinion in the Appellate Division, which was adopted by the Court of Appeals, stated in pertinent part:

" * * * It cannot be claimed that the publi-

cation of a legal text which purports to say what the law is amounts to legal practice. And the mere fact that the principles or rules stated in the text may be accepted by a particular reader as a solution to his problem, does not affect this. Courts and lawyers continuously use and cite texts for this very purpose. So also with forms. The publication of a multitude of forms for all manner of legal situations is a commonplace activity and their use by the bar and the public is general. In fact, many statutes and court rules contain the forms to be used in connection with them. Apparently it is urged that the conjoining of these two, that is, the text and the forms, with advice as to how the forms should be filled out, constitutes the unlawful practice of law. But that is the situation with many approved and accepted texts.

"Dacey's book is sold to the public at large. There is no personal contact or relationship with a particular individual. Nor does there exist that relation of confidence and trust so necessary to the status of attorney and client. This is the essential of legal practice—the representation and the advising of a particular person in a particular situation. * * *

* * * * *

"At most the book assumes to offer general advice on common problems, and does not purport to give personal advice on a specific problem peculiar to a designated or readily identified person." 283 NYS2d at 997-998.

Relying on *Dacey* the Supreme Court, Appellate Division, in *State v. Winder*, 42 AD2d 1039, 348 NYS2d 270, held that the general publication of a "Divorce Yourself Kit" did not constitute the unauthorized practice of law.

We think it follows that the third, fourth and fifth paragraphs of the decree are also overbroad.

Assuming, as we do, that it is lawful for the defendants to publish and sell their divorce kits, we think defendants cannot be enjoined from advertising that the divorce kits are "sufficient to terminate a marriage, settle property rights between married persons, determine child custody, support or visitation." In other words, if the defendants may sell the divorce kits, we think they can advertise the purpose for which they have been prepared and offered for sale.

It is clear that if the forms are taken by a customer, filled out with the proper information, and used as directed in the manual, the customer can obtain a divorce, have the marital property rights settled and the issues of child custody, support and visitation also settled. The evidence discloses that approximately one-half of defendants' customers were apparently able to fill out the forms without help from defendants and to obtain a dissolution of marriage. The testimony of members of the staffs of the courts of domestic relations disclose that a good many persons obtained divorces by the use of forms purchased from defendants or other concerns selling similar do-it-yourself kits. It is true that in some cases it was necessary for the court personnel to help in filling out some of the forms brought to court by the litigants.

The clerk of one of the domestic relations courts in Portland testified that the court averaged "at least one *pro se* divorce a day" and "many times two or three." He further testified that in "eight or nine out of ten of the ones that come before me, I have to fill out some portion of it, or perform some task that must be done prior to the court hearing the case." He further testified as follows:

"Q Mr. Vandergaw, are you opposed to the function of the Oregon Divorce Council?

\* \* \* \* \*

"THE WITNESS: No, I think the concept of do-it-yourself divorce is necessary."

The clerk of another Portland domestic relations court testified that about 10 people a week represent themselves in obtaining divorces in that court. She also testified that she had to help some of the people fill out the do-it-yourself forms. She said:

"A  Okay. Generally the biggest problem that they come in with is incompleted forms, or with part of the forms missing. Like, they will be missing an affidavit, or they will come in for a hearing and they actually want to do it without a hearing because there's no children but they don't have the proper forms for that, or they come in and they don't have service accomplished, but the things that we do the most, that I do the most often with the people is to help them fill out the forms, because they come with them blank."

The plaintiff called as witnesses only four persons who had purchased divorce kits from defendants. In each case a divorce was obtained. In one case the form submitted to the court stated erroneously that the husband was to be awarded the home when in fact the parties lived in a rented house. The error was disclosed during the divorce hearing and corrected by the trial judge.

In another case there was difficulty in obtaining service on the husband, who was a soldier stationed in Korea, and because of this complication, the customer engaged a lawyer to complete the proceeding.

In a third case the witness purchased a divorce kit and had the forms filled out by the defendants, but the forms were not used and the witness engaged a lawyer to obtain her divorce.

In the fourth case the customer purchased a

divorce kit and after some delay obtained a divorce, but was dissatisfied, primarily because an automobile owned jointly with the husband was not awarded to her.

In all four of these cases it is clear that defendants' employees were flagrantly practicing law by counseling with and giving advice to the customers. However, the plaintiff did not attempt to prove that the forms were not effective if used as directed.

It may be that many laymen are not qualified on their own to select the proper forms and to complete the forms with the necessary exactitude to terminate their marriage and settle the related issues of property rights, child custody, support and visitation. However, the fact that some persons may be unable, without help from some source, to obtain a dissolution of the marriage does not justify preventing the defendants from advertising that marriage dissolution and its related issues can be accomplished by the use of the divorce kits.

The Supreme Court of Florida has taken a different view and has held that the giving of specialized advice to a general audience rather than to a particular individual constitutes the practice of law. See *The Florida Bar v. American Legal & Bus. Forms, Inc.*, 274 S2d 225 (Fla 1973) and *The Florida Bar v. Stupica*, 300 S2d 683 (Fla 1974).

Although defendants do not restrict the sale of their divorce kits to persons obtaining noncontested divorces, it is clear that their advertising is directed primarily to persons in that class. Two of the advertisements quoted supra refer particularly to *"non-contested* divorce".

The Manual for Divorce, which is the explanatory textual material included with each kit, contains

on the first page immediately under the Table of Contents the following disclaimer in large type:

"PUBLISHER'S MEMO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

"THE SERVICES PROVIDED IN YOUR MEMBERSHIP MAY NOT BE APPLICABLE FOR EVERYONE. YOUR COUNCIL RECOMMENDS THIS SERVICE ONLY FOR THOSE WHO CAN ENTER INTO A DEFAULT CATEGORY. FOR THOSE WHO MAY SUFFER OPPOSITION FROM YOUR SPOUSE BECAUSE OF CHILD CUSTODY, OR PROPERTY DIVISION, ALIMONY, OR ANY OF THE OTHER PROBLEMS THAT HAVE ARISEN BETWEEN THE TWO PARTIES, THE COUNCIL STRONGLY RECOMMENDS THAT YOU ENGAGE THE SERVICES OF AN ATTORNEY."

■ It should not be overlooked that ORS 9.320 provides that "any action, suit, or proceeding may be prosecuted or defended by a party in person." This means that any person has the unqualified right to prosecute a suit to terminate his marriage and to settle the related issues of property rights, child custody, support and visitation without the help of either an attorney or forms obtained from defendants or any other similar source.

■ We conclude that in the advertising and selling of their divorce kits the defendants are not engaged in the practice of law and may not be enjoined from engaging in that part of their business. We further conclude, however, that all personal contact between defendants and their customers in the nature of consultation, explanation, recommendation or advice or other assistance in selecting particular forms, in filling out any part of the forms, or suggesting or advising how the forms should be used in solving the particular customer's marital problems does consti-

tute the practice of law and must be and is strictly enjoined.

The decree of the trial court is modified in accordance with the foregoing opinion and, as so modified, is affirmed.