Argued and submitted June 19, reversed and remanded October 22, 2003

## OREGON STATE BAR,
*Appellant,*

*v.*

## Barry L. TAUB,
*Respondent.*

## 16-00-18160; A115841

78 P3d 114

Terence J. Hammons argued the cause for appellant. With him on the briefs was Hammons & Mills.

John C. Fisher argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Schuman, Judge.

SCHUMAN, J.

---

* Deits, C. J., *vice* Kistler, J., resigned.

## SCHUMAN, J.

Plaintiff, the Oregon State Bar, brought this action to enjoin defendant from engaging in the unauthorized practice of law. Both parties filed motions for summary judgment. The trial court granted defendant's motion, denied plaintiff's, and entered judgment in favor of defendant. Plaintiff appeals. We reverse and remand.

Plaintiff assigns error to both the order granting defendant's motion for summary judgment and to the order denying plaintiff's. Both are subject to review, *Cochran v. Connell*, 53 Or App 933, 939-40, 632 P2d 1385, *rev den*, 292 Or 109 (1981), and both are reviewed according to the same standard: summary judgment is appropriate if the record and all reasonable inferences that may be drawn from it, viewed in the light most favorable to the nonmoving party, disclose no issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

The parties agree on the following facts. Defendant practiced as an attorney specializing in bankruptcy and dissolution of marriage until he was disbarred in 1998. *In re Taub*, 326 Or 325, 951 P2d 720 (1998). He then began conducting what he advertises to the public as a paralegal service, principally in the same fields. When a potential customer first contacts defendant, he sends the customer a letter requesting information relevant to the customer's legal problem. In dissolution cases, that letter asks the customer to provide basic personal information and details about the marriage the customer wishes to dissolve and to send the answers to defendant. In bankruptcy cases, the defendant asks the customer to complete a list of monthly expenditures and requests that the customer provide defendant with financial documents and information. Both letters anticipate a meeting, either in person or by telephone: the dissolution letter states, "As soon as I receive this form from you I will call you to discuss what you want on the paperwork[,]" and the bankruptcy letter states, "At the appointment we will discuss everything else that needs to be on the paperwork." The customer also receives a letter asking him or her to authorize

defendant to prepare the necessary documents; that letter contains a check-the-box list asking the customer to indicate whether the case is a Chapter 7 Bankruptcy, Copetitioner Divorce, Divorce, or "Other."

Defendant and the customer then meet, either in person or by telephone. Using the information elicited from the customer, defendant completes the appropriate documents. The level of the customer's participation in document preparation varies from customer to customer. Sometimes the customer provides all of the necessary information with no input from defendant; on other occasions, as defendant testified in his deposition, "to some extent, I might use [the customer's answers on the forms], and to some extent not, depending upon, you know, what the individual situation is." On occasion, customers have questions about the information defendant has asked them to provide; when that occurs, defendant "[u]sually * * * answer[s] the question with it is best to go have a consultation with an attorney about that * * *." Where a document requires the result of a mathematical calculation based on the application of a statutory formula to raw data provided by the customer, defendant performs the calculation and fills in the appropriate space on the document. Ultimately, defendant himself prepares a final version of the documents, returns them to the customer, and, based on information available from the clerk of the court, instructs the customer as to where and how to file them.

■ Oregon law provides that, with the exception of *pro se* litigants, "no person shall practice law * * * unless that person is an active member of the Oregon State Bar"; the Bar has authority to seek an injunction against a person its Board of Governors believes to be violating that restriction. ORS 9.160; ORS 9.166. Because defendant has been disbarred, the sole question in this case is whether his business constitutes the practice of law. This court recently defined "the practice of law" in *Oregon State Bar v. Smith,* 149 Or App 171, 942 P2d 793, *rev den,* 326 Or 62 (1997), *cert den,* 522 US 1117 (1998). The defendants in *Smith* operated a paralegal services business that provided customers with legal forms and individualized legal advice. *Id.* at 173. In holding that the defendants had unlawfully engaged in the practice of law, we stated that "certain core criteria are well settled. * * * [T]he

practice of law means the exercise of professional judgment in applying legal principles to address another person's individualized needs through analysis, advice, or other assistance." *Id.* at 183.

 This definition of law practice has two aspects: exercise of professional judgment and application of legal principles to individual cases. An exercise of professional judgment occurs any time there is "informed or trained discretion * * * exercised in the selection or drafting of a document to meet the [legal] needs of the persons being served[;]" an "intelligent choice [made] between alternative methods" of drafting a legal document, *State Bar v. Security Escrows, Inc.,* 233 Or 80, 89, 91, 377 P2d 334 (1962); or advice given that "involves the application of legal principles[,]" *State Bar v. Miller & Co.,* 235 Or 341, 344, 385 P2d 181 (1963). Application of legal principles to individual circumstances occurs when, for example, a paralegal gives advice to clients that is specific to the individual client, *see In re Morin,* 319 Or 547, 878 P2d 393 (1994), or when a nonlawyer recommends particular legal forms tailored to the recipient's particular problems, *State ex rel Oregon State Bar v. Wright,* 280 Or 713, 719, 573 P2d 294 (1977).

Oregon courts have frequently applied these criteria to the preparation by nonlawyers of legally significant documents and forms. In *Security Escrows, Inc.,* the Oregon Supreme Court stated that, "[i]f the customer does not know what forms to use or how to direct their completion, then he needs legal advice. If the customer does know what he wants and how he wants it done, he needs only a scrivener." 233 Or at 93. In *Oregon State Bar v. Gilchrist,* 272 Or 552, 538 P2d 913 (1975), the nonlawyer defendants sold do-it-yourself divorce kits and conceded that they conducted interviews, recommended which forms within the kit to use, answered questions and otherwise counseled their customers. *Id.* at 557. The court held that the advertising and sale of the kits was not the practice of law, but that

> "all personal contact between defendants and their customers in the nature of consultation, explanation, recommendation or advice or other assistance in selecting particular forms, in filling out any part of the forms, or suggesting or

advising how the forms should be used in solving particular customer's marital problems does constitute the practice of law * * *."

*Id.* at 563-64.

*Gilchrist* was refined in later cases. In *Oregon State Bar v. Fowler,* 278 Or 169, 172, 563 P2d 674 (1977), the court held that the Oregon State Bar was not entitled to injunctive relief where the evidence showed only that the nonlawyer defendant used specific legal forms provided by the customer and that the customer dictated the precise terms and legal definitions used in the forms; in that situation, the court held, the defendant had not exercised any independent judgment. In *Oregon State Bar v. Ortiz,* 77 Or App 532, 713 P2d 1068 (1986), the nonlawyer defendant advised and assisted customers in the preparation of citizenship and immigration visa applications. The court stated that, although "it does not require legal skill to fill out the forms, [an] understanding of the consequences attendant on their completion and filing * * * does require legal skill and judgment." *Id.* at 536. Finally, in *In re Morin,* the court held that a paralegal unlawfully practiced law when he exercised his own discretion in recommending which trust or will forms clients should use. 319 Or at 563.

As applied to the present situation, these cases teach that, if a reasonable finder of fact could infer from the record that defendant exercised independent judgment or discretion in the selection or recommendation of the forms provided to customers, selected the precise terms and information included in the documents, or provided advice regarding the customer's individual problems or the legal consequences of filing particular documents, then the trial court erred in granting defendant's motion for summary judgment. We conclude that the record supports several such inferences.

For example, defendant's first personal contact with the customer occurs after the customer responds to defendant's advertisement. Defendant's deposition testimony and the contents of the information request letter and "Customer Agreement" indicate that defendant may exercise independent professional judgment in response to the customer's case. At his deposition, defendant testified:

"[Defendant]: All I am going to say is this form was sent out to Mr. Horsley. Okay. It depends what—you know, what the documents—there is different—This form, this letter, was sent out to Mr. Horsley. *I don't send the same letter out to every person.*

"[Plaintiff's counsel]: Okay. So it is tailored to whatever it is you're doing for them?

"[Defendant]: It is tailored to what the forms are, what they ordered. *Obviously if there's somebody who had kids, I'm not going to send them some form that doesn't apply to nonkids,* because they requested different forms.

"* * * * *

"[Plaintiff's counsel]: For instance, [summary dissolution forms] are not intended for use when there is real estate involved? Is that true?

"[Defendant]: Are you asking me what — *I would just say that whatever the forms say what they're appropriate for is what they're appropriate for.*"

(Emphasis added.) Defendant's statements here are ambiguous. They may illustrate the full extent of what he does during his initial conversations with the client; he could simply be responding to the specific requests of the customer. However, they may also show that defendant uses his knowledge of the legal consequences of divorce and bankruptcy to guide the customer into making certain "requests" for documents.

Another ambiguity arises regarding defendant's "Customer Agreement," which, according to his testimony, he goes over with and explains to the customer. The agreement asks the customer to authorize defendant to prepare documents and requires the customer to choose between Chapter 7 Bankruptcy, CoPetitioner Divorce Documents, Divorce Documents, or "Other." On the existing record, we cannot know whether the "explanation" provided by defendant involves, for example, explaining the meaning of the legally significant phrase "copetitioner divorce," or whether explanations are limited to clarifying the parts of the agreement dealing with fees.

With some customers, defendant may well be the mere scrivener he claims to be, filling in the blanks with the

information provided to him in the information request letter and employing no independent judgment at all. In other situations—for example, where the customer partially completes forms, or completes information on an improper form, and brings it to defendant—a different inference arises. Defendant's testimony is unclear as to how he deals with such situations:

> "[T]his is probably a situation where the customer bought the forms, filled them out her or himself, and brought those in to me. And this typically happens where they say, I tried to do these. I can't do them. I want you to do them for me. And they will bring the forms in and give them to me. *And to some extent, I might use them, and to some extent not, depending upon, you know, what the individual situation is.*"

(Emphasis added.) A rational factfinder could infer that defendant suggests the use of a different form, transposes information from the improper form to what he regards as the proper form, or uses his own discretion to complete forms. Further, defendant testified that, in response to questions from the customer, he *"usually"* advised consulting a lawyer, leaving open the possibility that sometimes he did not, and that some of those occasions might call for the individualized application of professional judgment. Those actions raise serious questions as to whether he is practicing law. In short, on the record before us, which does not contain any testimony or documents that might indicate the actual conversations that defendant had with any particular customer, a rational trier of fact could infer that defendant practices law by exercising professional judgment tailored to individual situations. The trial court therefore erred in granting defendant's motion for summary judgment.

Plaintiff also assigns error to the trial court's denial of its cross-motion for summary judgment. Our conclusion that the trial court erred in granting defendant's motion for summary judgment does not necessarily mean that it should have granted plaintiff's. *See McKee v. Gilbert,* 62 Or App 310, 321, 661 P2d 97 (1983) ("That one party fails to satisfy the burden on his own motion does not imply that the opposing party has satisfied *his* burden and should be granted summary judgment." (Emphasis in original; citations omitted.))

In fact, our conclusion that the court erred in granting defendant's motion for summary judgment derives from our conclusion that there are disputed issues of material fact. That being the case, we also deny plaintiff's motion for summary judgment.

Reversed and remanded.