Barry L. TAUB, Plaintiff–Appellant,

v.

Mark H. WEBER, Acting United States Trustee for Region 18; Ilene J. Lashinsky,* United States Trustee for Region 18, Defendants–Appellees.

No. 02–36018.

United States Court of Appeals, Ninth Circuit.

Submitted March 5, 2004.**

Decided May 5, 2004.

___

* Ilene J. Lashinsky is substituted for her predecessor, Diane E. Tebelius, as United States Trustee for Region 18. Fed. R.App. P. 43(c)(2).

** This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Barry L. Taub, pro per, Eugene, OR, appellant.

William L. Courshon, U.S. Dept. of Justice, Seattle, WA, for appellee United States Trustee for Region 18.

Before McKEOWN, FISHER, Circuit Judges, and GONZALEZ,*** District Judge.

McKEOWN, Circuit Judge.

This case arises out of an adversary proceeding by the United States Trustee ("Trustee") against Barry Taub, a bankruptcy petition preparer. Applying Oregon law, the issue we decide is whether Taub engaged in the unauthorized practice of law by interpreting the terms "market value" and "secured claim or exemption" in connection with completion of bankruptcy forms. Here, Taub's discretionary application of a legal principle took him far outside the role of a scrivener. We agree with the bankruptcy court and the district court that Taub engaged in the unauthorized practice of law.

*** The Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation.

## I. BACKGROUND

The facts are undisputed. The Greenwaldts hired Taub to prepare their Chapter 7 bankruptcy documents for filing with the United States Bankruptcy Court for the District of Oregon. Taub is not licensed to practice law in Oregon. Rather, he is a "bankruptcy petition preparer" within the meaning of 11 U.S.C. § 110.[1]

Taub and the Greenwaldts disagreed about how to treat a 401(k) retirement account on the bankruptcy forms. Schedule B, an official form included with the Greenwaldts' Chapter 7 filing, required listing the "market value" of the debtors' personal property. The heading on the form read: "CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION." In their draft documents, the Greenwaldts indicated that the retirement account held approximately $80,000. The Greenwaldts also noted that they had borrowed $39,000 against the account. The Greenwaldts thus filled out draft bankruptcy forms listing what they believed was the net value of the account—$41,000. Taub, however, prepared the forms with a market value listing of $80,000. As the bankruptcy court explained: "The discrepancy was pointed out, but Taub gave no explanation. [The] Greenwaldts asked him to change the entry but he refused. They eventually relented, assuming that he knew what he was doing."

In the Greenwaldts' Chapter 7 bankruptcy case, and two other matters where Taub was the petition preparer, the Trustee filed motions to disgorge excessive fees charged by Taub. Around the same time, in a separate Chapter 7 bankruptcy case where Taub was the petition preparer, the Trustee filed an adversary proceeding against Taub seeking disgorgement of excessive fees and injunctive relief on the ground that Taub engaged in the unauthorized practice of law. The bankruptcy court consolidated the various proceedings for trial. After trial, the bankruptcy court found, and the district court affirmed, that Taub had engaged in the unauthorized practice of law while preparing the Greenwaldts' petition. Taub was ordered to disgorge the fees.

## II. DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). "We independently review the bankruptcy court's determinations and do not give deference to the district court." *Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954, 957 (9th Cir.1999). We review *de novo* the bankruptcy court's conclusions of law. *Id.*

Bankruptcy courts have the power to regulate the activities of bankruptcy petition preparers under 11 U.S.C. § 110. Section 110(k) states that nothing in the section shall be construed to permit "the unauthorized practice of law." Bankruptcy courts generally look to state law for guidance when determining whether a person has engaged in the unauthorized practice of law. *See 2 Collier on Bankruptcy*, par. 110.12 (15th ed. 2004) ("Section 110(k)) provides that the ability of nonlawyers to practice before bankruptcy courts in a given jurisdiction will be governed by '[relevant state] law, including rules and laws that prohibit the unauthorized practice of law,' as well as by section 110 itself." (alteration in original); *see also, In re Kangarloo*, 250 B.R. 115, 123 (Bankr. C.D.Cal.2000); *In re Farness*, 244 B.R.

---

1. A "bankruptcy petition preparer" is "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing" in a bankruptcy case. 11 U.S.C. § 110(a)(1).

464, 470 (Bankr.D.Idaho 2000); *In re Stacy*, 193 B.R. 31, 38 (Bankr.D.Or.1996). Here, the parties agree that Oregon law applies.

Under Oregon law, "no person shall practice law ... unless that person is an active member of the Oregon State Bar." Or.Rev.Stat. § 9.160(1) (2001).[2] The Oregon legislature has not defined the practice of law. *See Oregon State Bar v. Security Escrows, Inc.*, 233 Or. 80, 377 P.2d 334, 337 (1962). Instead, it has been left to the Oregon courts to determine, on a case-by-case basis, what constitutes the unauthorized practice of law. *See Oregon State Bar v. Smith*, 149 Or.App. 171, 942 P.2d 793, 798 (1997).

Although the Oregon courts have not defined the outer limits of the practice of law in Oregon, two leading decisions by the Oregon Supreme Court inform our conclusion that Taub engaged in the unauthorized practice of law.

In *Security Escrows*, 377 P.2d at 335, the Oregon State Bar brought suit against two corporations and their officers seeking to enjoin them from preparing conveyances and other specified instruments. The issue before the Oregon Supreme Court was "whether [the] ... defendants lawfully may draft such instruments as contracts, deeds, mortgages, satisfactions, leases, options, certificates of assumed business name, bulk-sales affidavits, and the like...." *Id.* at 335. In resolving the case, the court needed to "mark out at least enough of the boundaries of the practice of law so that [it could] decide whether or not the activities complained of fall within them ...." *Id.* at 337. To that end, the court concluded:

For the purposes of this case, we hold that the practice of law includes the drafting or selection of documents and the giving of advice in regard thereto any time an informed or trained discretion must be exercised in the selection or drafting of a document to meet the needs of the persons being served...: *[A]ny exercise of an intelligent choice, or an informed discretion in advising another of his legal rights and duties,* will bring the activity within the practice of the profession.... The line is drawn at the point where there is any discretion exercised by the escrow agent in the selection or preparation for another of an instrument, with or without costs.

*Id.* at 339 (emphasis added).

Applying this analysis, the court held: "If the draftsmanship is the product of an intelligent choice between alternative methods, and the choice is made by the escrow representative, then we agree that it must be enjoined." *Id.* at 340. Significantly, the court carved out a role for someone who is not practicing law, concluding that the defendants could not be enjoined from acting "as scriveners." *Id.* at 340. The court went on to articulate the essence of its holding in simple terms: "If the customer does not know what forms to use or how to direct their completion, then he needs legal advice. If the customer does know what he wants and how he wants it done, he needs only a scrivener." *Id.* at 340.

The Oregon Supreme Court again addressed the issue of unauthorized practice of law in *Oregon State Bar v. Gilchrist*, 272 Or. 552, 538 P.2d 913 (1975). The defendants in *Gilchrist* sold and adver-

---

**2.** In 2003, the Oregon legislature amended Oregon Revised Statutes § 9.160(1) to read: "Except as provided in this section a person may not practice law or represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar." *See* S.B. 43 (Or.2003) (enacted). We need not decide whether this amendment applies retroactively to Taub. The amendment to this subsection does not substantively change the law as it relates to Taub; nor does it affect our result.

tised "do-it-yourself divorce kits," which included a manual, various forms, and instructions designed to enable customers to complete and file the forms necessary to secure a dissolution of marriage. *Id.* at 914. The defendants offered a service where, for a fee, they would complete the forms for customers with information provided through either a written questionnaire or a personal interview. *Id.* at 915. Approximately half of their customers utilized this service. *Id.* The court held that although advertising and selling of the divorce kits was permissible, advising customers in selecting and completing the forms constituted unauthorized practice of law. The court explained:

> [A]ll personal contact between defendants and their customers in the nature of consultation, explanation, recommendation or advice or other assistance in selecting particular forms, in filling out any part of the forms, or suggesting or advising how the forms should be used in solving the particular customer's marital problems does constitute the practice of law . . . .

*Id.* at 919.

■ *Gilchrist* reaffirmed the principle articulated in *Security Escrows*—a non-lawyer may not exercise discretion to assist customers with filling out legal forms. Thus, in Oregon, at a minimum "the 'practice of law' means the exercise of professional judgment in applying legal principles to address another person's individualized needs through analysis, advice, or other assistance." *Smith,* 942 P.2d at 800; *see also Oregon State Bar v. Fowler,* 278 Or. 169, 563 P.2d 674, 678–79 (1977) (applying the *Security Escrows* standard).

■ Here, Taub points to *Smith* claiming that he did not exercise professional judgment because he "simply follow[ed] the instructions and directions accurately on the Official Bankruptcy forms." Taub relies on the assumption that following the instructions on the forms is a simple task that any layman can do without exercising discretion. The circumstances here do not support this assumption. Rather, Taub invoked his "professional judgment in applying legal principles to address [his customers'] individualized needs," *Smith,* 942 P.2d at 800, precisely the conduct deemed by *Smith* to be the unauthorized practice of law.

As Taub admits, the directions on Schedule B tell the debtor to list the "CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION." "Market value" is not fully defined on Schedule B, but it is defined in the "Instructions for Completing Schedule B—Personal Property." [3] The question was how to fix a market value of the retirement account and whether the loan qualified as

---

3. The full text of the portion of the instructions regarding market value reads:

> 6) The "current market value" describes the market value on the date the petition was filed. Value is not the same as purchase price; rather it usually is a fraction of that. "Market value," is a term that is subject to interpretation and may vary with the nature of the market for particular items. The market for used clothing and household furnishings is very different from the market for blue chip stocks. For cars, the National Automobile Dealers Associa-

tion (NADA) publishes current market values. The NADA book is available at public libraries and on the Internet. The values stated should be appropriate for the property described.
> 7) Debtors should make sure that the market values of the items of property listed in this schedule are consistent with those stated in Schedules C and D. While certain categories, such as cash, are easy to value, the correct market value of other categories may be more difficult to pinpoint. When the debtor cannot find the market value, the debtor should state the approximate

a "secured claim or exemption" that should not be deducted. The answer was not readily apparent without some interpretation of the terms "market value" and "secured claim or exemption" under the bankruptcy code.

Determining whether a loan taken by a debtor from a 401(k) plan or other retirement account constitutes a "claim" under the code is surely an exercise of legal judgment. Indeed, some courts have held that similar loans do not constitute claims. For example, in *In re Esquivel,* 239 B.R. 146, 149 (Bankr.E.D.Mich.1999), the court examined a personal loan from a 401(k) plan and noted that "courts that have considered the status of pension-account loans have overwhelmingly held that, in most cases, they do not give rise to secured or unsecured 'claims' or 'debts' under the Bankruptcy Code." *See also In re Villarie,* 648 F.2d 810, 811–12 (2d. Cir.1981) (examining a pension plan, and holding that loan from pension plan to pensioner could not constitute a "claim" or "debt" under the code). We express no opinion as to the correctness of these decisions or their application to the facts present here. We note only that they illustrate that Taub applied a legal principle in deciding that the Greenwaldts could not exclude their $39,000 loan. Taub's determination regarding the meaning of the terms "market value" and "secured claim or exemption" crossed the line laid down by the Oregon Supreme Court. Consequently, we affirm the district court's finding that Taub engaged in the unauthorized practice of law.

**AFFIRMED.**

amount, based on the market for the property and include with the schedule a statement of the method of valuation used. Official Instructions for Completing Schedule B—Personal Property, *available at* http://