**In re Tracy LUCAS, Debtor.**

**Tracy Lucas, Plaintiff,**

**v.**

**Demetrius Nickens and Fresh Start Solutions, Inc., Defendants.**

**Bankruptcy No. 03–60363–SD. Adversary No. 03–8247–SD.**

United States Bankruptcy Court, D. Maryland, at Baltimore.

July 12, 2004.

Tracy Lucas, Baltimore, MD, pro se.

J. Michael Broumas, Baltimore, MD, for plaintiff.

Philip Abraham, Tara B. Knowles, Resnick, Abraham, Baltimore, MD, for defendants.

Sean C. Logan, Logan Russack, LLC, Annapolis, MD, Chapter 7 Trustee.

### MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

E. STEPHEN DERBY, Bankruptcy Judge.

Defendants, Demetrius Nickens and Fresh Start Solutions, Inc., are bankruptcy petition preparers. They have filed a motion to dismiss the pending adversary complaint in which Plaintiff, Tracy Lucas, the Debtor, seeks damages against Defendants for their alleged negligence and unauthorized practice of law and an injunction preventing Defendants from collecting their pre-petition claims against her and from filing future bankruptcy petitions in this court pursuant to 11 U.S.C. § 110. The instant motion raises three issues:

1. Whether exculpatory clauses in a pre-petition contract between the litigants that releases Defendants from liability in preparing Plaintiff's bankruptcy petition are enforceable.

2. Whether an arbitration clause requiring the litigants to participate in mandatory arbitration for claims arising out of their pre-petition contract is enforceable.

3. Whether this court has jurisdiction to determine if Defendants engaged in the unauthorized practice of law in violation of 11 U.S.C. § 110.

### Background

Plaintiff filed her petition initiating this case under Chapter 7 on June 30, 2003. She was proceeding pro se. In connection with the filing, she employed Defendants to assist her in preparing her bankruptcy petition and related paperwork, in exchange for a fee of $185.00.[1]

On October 22, 2003, Plaintiff commenced the present adversary proceeding. Attached to the complaint is a letter dated September 24, 2003, from Defendants to Plaintiff's attorney, whom Plaintiff retained after she filed this case, asserting that Plaintiff owes a total of $379.25 for Defendants' assistance in preparing her petition and for court costs Defendants incurred in attempting to collect the original $185.00 fee. The letter reads, in relevant part, as follows:

> Facts: Your client Tracy Lucas retained Freshstart Solutions, Inc. to prepare a Chapter 7 Bankruptcy for $185.00.... Your clients [sic] issued Freshstart Solutions a fraudulent check in the amount

---

1. 11 U.S.C. § 110(a)(1) defines a "bankruptcy petition preparer" as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." A "document for filing" is defined as "a petition or any other document prepared for filing by a debtor in a United States Bankruptcy Court ... in connection with a case under [Title 11]." 11 U.S.C. § 110(a)(2). There is no dispute that Defendants are petition preparers as defined by Section 110(a)(1) and that they prepared Plaintiff's petition and related paperwork for her bankruptcy case filed in this court.

of $185.00. We have attempted to collect said funds for over 60 days.

Pursuant to the Commercial Law Article, in addition to the amount of the check or instrument [and] a collection fee of up to $35.00, for an amount up to 2 times the amount of the check or instrument, but not more than $1,000.00[.]

In addition we may prosecute under Title 8 Subtitle 1 of the Criminal Law Article of [the] Maryland [Code] and subject to the following penalties:

\* \* \* \* \* \*

(2) If the property or services has a value of less than $500[.00], a fine not exceeding $100[.00] or imprisonment not exceeding 18 months or both.

\* \* \* \* \* \*

... If we don't here [sic] from you within 15 days we will assume your client will not resolve this balance voluntarily and we may invoke our rights under the laws of Maryland to collect what is owed to this company. Please also be advised should we pursue this matter civilly this matter will be resolved by mandatory and binding arbitration.

The complaint consists of three counts. In Count I Plaintiff asserts that Defendants incorrectly prepared her Schedules of Assets and Liabilities and Statement of Financial Affairs, and that as a result of their negligence, her bankruptcy case and discharge "have been delayed for a substantial period of time." In support of her claim, Plaintiff asserts that her Schedules "included entries that were apparently left over from another client's petition," and "were so materially wrong that the meeting of creditors ... had to be rescheduled several times." In Count II Plaintiff alleges that Defendants have engaged in deceptive misconduct and the unauthorized practice of law in violation of 11 U.S.C. § 110.

In this regard, Plaintiff alleges that Defendants: (1) advised her about bankruptcy law; (2) recommended "the Chapter of bankruptcy that she should choose"; (3) advised her about her "exemptions and the structure and content of the schedules and statements of financial affairs"; (4) advised her about "what to expect at the meeting of creditors and how to handle that meeting"; and (5) sought to exempt more property on Schedule C "than what can be exempted under Maryland law." In Count III Plaintiff again asserts that Defendants have engaged in the unauthorized practice of law and that they have violated the automatic stay in attempting to collect their pre-petition fee. She asks the court to enjoin Defendants and their employees from attempting to collect the pre-petition fee and from filing further bankruptcy petitions with this court.

*Standard of Review*

Motions to dismiss are governed by Fed. R.Civ.P. 12(b)(6), as incorporated in Fed. R. Bankr.P. 7012(b). Rule 12(b)(6) provides, in relevant part:

(b) Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion...

(6) failure to state a claim upon which relief can be granted....

When ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded allegations in the complaint, including all reasonable inferences that may be drawn from them, in the light most favorable to the plaintiff. *In re Pontier,* 165 B.R. 797, 798–99 (Bankr.D.Md.1994). "[A] complaint should not be dismissed merely because the court doubts that the plaintiff

will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted." *Advanced Health–Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 145 n. 8 (4th Cir. 1990). Conversely, motions to dismiss under Rule 12(b)(6) should only be granted if "there is no doubt that, even if plaintiff is able to prove all facts necessary to support his claim as alleged, plaintiff would not be entitled to the relief sought." *Stanley H. Silverblatt Elec. Contractor v. Marino* (*In re Marino*), 115 B.R. 863, 867 (Bankr.D.Md.1990)(citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531 (4th Cir.1988)).

*Discussion*

For the purpose of organization, Defendants' contentions will be addressed *seriatim.*

### I.

Defendants contend that all three Counts of the complaint should be dismissed because the contracts Plaintiff executed contain "release and hold harmless" clauses that purport to exculpate Defendants from claims arising out of their preparation of Plaintiff's bankruptcy petition. Noting that attorneys are prohibited from prospectively exonerating themselves from professional liability, Plaintiff counters that Defendants should not be permitted to absolve themselves from the "effects of their own [past and future] misconduct." Aside from these conclusory arguments, neither party has provided analysis to bolster their particular positions.

■ In Maryland, the law is settled that exculpatory clauses are valid unless legislation exists that prohibits such stipulations. *Wolf v. Ford*, 335 Md. 525, 644 A.2d 522, 525 (1994) (citing *Winterstein v. Wilcom*, 16 Md.App. 130, 293 A.2d 821, 824 (1972); Restatement (Second) Contracts § 195(1) (1985)); *see also Eaglehead Corp. v. Cambridge Capital Group, Inc.*, 170 F.Supp.2d 552 (D.Md.2001); *Seigneur v. Nat'l Fitness Inst., Inc.*, 132 Md.App. 271, 752 A.2d 631, 638 (2000); *Adloo v. H.T. Brown Real Estate*, 344 Md. 254, 686 A.2d 298, 301 (1996). In addition to the prohibitive legislation exception, three exceptions exist that will render an exculpatory clause invalid, namely: "(1) when the party protected by the clause intentionally causes harm or engages in acts of reckless, wanton, or gross negligence; (2) when the bargaining power of one party to the contract is so grossly unequal so as to put that party at the mercy of the other's negligence; and (3) when the transaction involves the public interest." *Seigneur*, 752 A.2d at 638 (citing *Wolf*, 644 A.2d at 525–26; *Winterstein*, 293 A.2d at 824); *Eaglehead*, 170 F.Supp.2d at 552; *Nat'l City Bank of Minneapolis v. Lapides* (*In re Transcolor Corp.*), 296 B.R. 343, 373 (Bankr.D.Md.2003); *Adloo*, 686 A.2d at 301. Before deciding on the validity of an exculpatory clause, however, a threshold determination must be made whether the clause "shields" the party relying on the clause from liability. *Adloo*, 686 A.2d at 301. That determination is the intent of the parties, which under the objective law of contracts requires an examination of the language of the exculpatory clause at issue. *Id.* (citing *Highley v. Phillips*, 176 Md. 463, 5 A.2d 824 (1939); *Fidelity & Deposit Co. v. Mattingly Lumber Co.*, 176 Md. 217, 4 A.2d 447 (1939)). Thus, the issue is whether the language in the subject exculpatory clauses reveal an intention by the parties to exonerate Defendants from claims of negligence, unauthorized practice of law, and injunctive relief for unauthorized practice of law and breach of the automatic stay.

The first exculpatory clause appears in a document captioned "LEGAL ADVICE DISCLOSURE & ARBITRATION NOTICE" (the "Legal Advice Notice"), which is dated June 28, 2003. The Legal Advice Notice provides, in relevant part:

YOUR SIGNATURE CERTIFIES THE FOLLOWING.

That Freshstart Solutions has not:

A) RECOMMENDED WHAT CHAPTER BANKRUPTCY I SHOULD FILE

B) CHANGE OR ADD ANY INFORMATION WITHOUT MY CONSENT TO MY PETITION

C) AGREE TO REPRESENT ME IN THE "SCHEDULED MEETING OF CREDITORS"

D) STATE THAT THEY ARE ATTORNEY'S [SIC]

E) GUARANTEE MY BANKRUPTCY

F) ANSWERED ANY LEGAL QUESTIONS, Example, How long will my discharge take? Can I keep my home and car? What is the difference between Chapter 7 & 13? Do I need a Lawyer? Etc...

YOUR SIGNATURE ALSO IMPLIES THAT YOU WILL HOLD FRESHSTART SOLUTIONS HARMLESS:

A) FOR ANY LEGAL ISSUES THAT ARISES [SIC] OUT OF YOUR BANKRUPTCY.

B) FOR ANY MISTAKES. (PLEASE REVIEW EACH PAGE OF YOUR PETITION)

I AGREE THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. MY SIGNATURE RELEASE [SIC] FRESHSTART SOLUTIONS FROM ANY AND ALL CLAIMS EITHER BROUGHT BY MYSELF AND OR AN EMPLOYEE OR TRUSTEE OF THE COURTS. I FURTHER AGREE TO MANDATORY ARBITRATION VERSUS LITIGATION....

*See* Defendant's Exhibit 1.

The second clause is found in a document that resembles an invoice, which is captioned "INDEPENDENT CONTRACTORS [sic] AGREEMENT FRESHSTART SOLUTIONS" (the "Contractor Agreement"), and dated June 28, 2003. The clause in the Contractor Agreement reads as follows:

Freshstart Solutions is a professional paperwork preparatory company. You [Plaintiff] are paying us [Freshstart Solutions, Inc.] to prepare paperwork for varied services such as, Debt Management, Bankruptcy, etc. You agree that we do not make any claim or guarantee regarding these matters. We are merely being paid for our services. You agree to hold our company harmless if any claim arises in reference to services provided. By signing this agreement you understand that we cant [sic] provide you with any kind of legal advice. You agree that we have explained this in detail.

*See* Defendant's Exhibit 2.

With respect to Count I, common law negligence, the general rule is that "contracts will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms[.]" *Adloo,* 686 A.2d at 301 (quoting *Crockett v. Crothers,* 264 Md. 222, 285 A.2d 612, 615 (1971)); *Home Indem. Co. v. Basiliko,* 245 Md. 412, 226 A.2d 258, 260 (1967). The rule is not intended to mean that exculpatory clauses must contain or use the word "negligence" or any other "magic words." *Adloo,* 686 A.2d at 304 (quoting *Audley v. Melton,* 138 N.H. 416, 640 A.2d 777, 778 (1994); *Alack v. Vic Tanny Int'l,* 923 S.W.2d 330, 335–36 (Mo.

1996)). However, "general release language does not satisfy the . . . requirement that the 'contract must clearly state that the defendant is not responsible for the consequences of his or her negligence.' " *Adloo*, 686 A.2d at 304 (quoting *Audley*, 640 A.2d at 779; *Barnes v. New Hampshire Karting Ass'n*, 128 N.H. 102, 509 A.2d 151, 154 (1986)). This standard is "stringent," and requires a clause to be both "unambiguous" and "understandable." *Adloo*, 686 A.2d at 304 (citing *Alack*, 923 S.W.2d at 334 n. 7.).

Neither the Legal Advice Notice or the Contractor Agreement provide a clear and unequivocal expression of the parties' intention to exonerate Defendants from liability caused by their own negligence. Items A–F of the Legal Advice Notice supply generic recitals indicating an intention to show that Defendants' did not provide legal services in preparing Plaintiff's bankruptcy petition; there is nothing in the wording of A–F that could be construed to release Defendants from their negligence. The second and third quoted portions of the Legal Advice Notice (indicating that Plaintiff will hold Defendants "harmless" for "any legal issues that arise[ ] out of [her] bankruptcy," as well as "any mistakes," and that Plaintiff will release Defendants from "all claims either brought by [Plaintiff] or an employee or

trustee of the courts") constitutes general release language. Likewise, the sentence in the Contractor Agreement in which Plaintiff agreed to hold Defendants "harmless" for "any claim[s] aris[ing] in reference to [Defendants'] services" qualifies as general release language. The clauses fail to exculpate Defendants from their alleged negligence because their language is too broad, and they provide no indication of an intention to exonerate Defendants for their own wrongdoing. None of the exculpatory clauses at issue address liability as a result of Defendants' negligence.

■■ Assuming, *arguendo*, that the exculpatory clauses here shield Defendants from liability caused by their negligence, at least one of the four exceptions[2] described earlier would render the releases inapplicable, i.e. the public interest. This exception includes the performance of a "public service obligation," such as "public utilities, common carriers, innkeepers, and public warehousemen," as well as "those transactions, not readily susceptible to definition . . . that are so important to the public good that an exculpatory clause would be 'patently offensive,' such that 'the common sense of the entire community would pronounce it' invalid. . . ." *See Adloo*, 686 A.2d at 301 (quoting *Wolf*, 644 A.2d at 526; *Md. Nat'l Cap. P. & P. v.*

**2.** Regarding the first exception, no legislation exists that would preclude a contract from providing for the release of an individual's common law negligence. With respect to the second exception, although the deficiencies alleged are serious and may hamper the proper administration of the estate, Plaintiff has not alleged that Defendants intentionally caused her harm, or engaged in reckless, wanton, or gross acts of negligence. Regarding the third exception, even if it is proven that Plaintiff signed a contract of adhesion (insofar as the agreement is one-sided in nature), taking the facts in the light most favorable to Plaintiff, Plaintiff has not alleged a basis for finding that these petition preparers

have a decisive advantage in bargaining strength against members of the public who seek to use their assistance because there are other competitors providing the same services, such as other petition preparers and attorneys. Debtors also have the option of completing the petition on their own. It follows that Plaintiff would not be able to prove Defendants had a disparate bargaining advantage over her because their services would not be considered "essential in nature." *See Seigneur*, 752 A.2d at 638 ("To possess a decisive bargaining advantage over a customer, the service offered must usually be deemed essential in nature.") (citing *Boucher v. Riner*, 68 Md.App. 539, 514 A.2d 485, 491 ( 1986)).

*Wash. Nat'l Arena,* 282 Md. 588, 386 A.2d 1216, 1228 (1978)) (internal quotation marks omitted). Here, the petition preparer-debtor relationship affects the public good inasmuch as a material failure to disclose information accurately regarding a debtor's financial affairs in the debtor's schedules and statement of financial affairs—such as Plaintiff has alleged here— may adversely impact distributions to creditors as well as the administration of the debtor's bankruptcy case. Consequently, the facts alleged by Plaintiff could invoke the public interest exception that would bar application of the exculpatory clauses at issue. For either of these alternate reasons, taking the facts and inferences therefrom in the light most favorable to Plaintiff, the Plaintiff has stated facts which, if proven, could entitle her to relief under Count I for common law negligence.

■ As for the remaining counts in the complaint, the court need not determine whether the exculpatory clauses in the Legal Advice Notice and the Contractor Agreement attempt to shield Defendants from liability caused by their alleged unauthorized practice of law (Count II), and breach of the automatic stay (Count III). Such exculpatory clauses that attempt to shield a petition preparer from liability caused by the unauthorized practice of law are contrary to legislation in Maryland. Md. Ann.Code, Bus. Occ. & Prof. Art. ("BOP"), Sec. 10–601(a), (1989, 2000 Repl. Vol.); Md. Rules 16–701 through 16–781; M.R.P.C. 5.5, 8.4, and 8.5(b). Further, under federal statutory law, a clause absolving a petition preparer from the unauthorized practice of law is also counter to the provisions of 11 U.S.C. § 110. Likewise, a clause prohibiting this court from enjoining a party from violating the stay is contrary to the provisions and purpose of 11 U.S.C. § 362. *See In re Shady Grove Tech Ctr. Assocs. Ltd. P'shp,* 216 B.R. 386, 390 (Bankr.D.Md.1998) ("[S]elf-executing clauses in pre-petition agreements purporting to provide that no automatic stay arises in a bankruptcy case are contrary to law and ... unenforceable, and ... self-executing clauses in pre-petition agreements that purport to vacate the automatic stay are likewise unenforceable.").

■ Parties may have the ability to contract as they see fit, *see Winterstein,* 293 A.2d at 824, but they may not enforce agreements that override existing legislation that prohibits their activities. To allow petition preparers to preemptively choose which statutes of Maryland law and sections of the Bankruptcy Code they will follow would contradict the prescribed purposes behind such legislation. Therefore, Plaintiff's claims in Counts II and III are not barred by the Legal Advice Notice or by the Contractor Agreement.

## II.

Defendants next assert that the complaint should be dismissed because Plaintiff agreed to submit "any claims to binding arbitration." The arbitration provision at issue provides, in relevant part:

.... I [Plaintiff] FURTHER AGREE TO MANDATORY ARBITRATION VERSUS LITIGATION. THE ARBITRATION PROVISION STATES THAT EITHER YOU [Defendants] OR WE CAN REQUIRE THAT ANY CLAIM (AS DESCRIBED IN THIS ARBITRATION NOTICE) BE RESOLVED BY BINDING ARBITRATION RATHER THAN IN A COURT BY A JUDGE OR A JURY. THE ARBITRATION PROVISION MAY SUBSTANTIALLY LIMIT OR AFFECT YOUR RIGHTS, INCLUDING YOUR RIGHT TO CONDUCT DISCOVERY, TO APPEAL, TO GO TO COURT & PARTICIPATE IN A CLASS ACTION

OR ANY SIMILAR PROCEEDINGS. ALL ARBITRATION PROCEEDINGS WILL BE HELD WITH (NAF) THE NATIONAL ARBITRATION FORUM. P.O. BOX 50191, MINNEAPOLIS MN 55405. THE PARTY INITIATING ARBITRATION WILL PAY THE FILING FEE. CLAIM, MEANS ANY CLAIM, CONTROVERSY OR DISPUTE OF ANY KIND BETWEEN YOU AND US.

*See* Defendant's Exhibit 1.

 Assuming the arbitration provision at issue is valid, it is governed by the Federal Arbitration Act (the "Act"). *See* 9 U.S.C. § 1, *et seq.* The Act provides a tool for the enforcement of valid arbitration clauses in federal court. *See id.; Startec Global Communications Corp. v. Videsh Sanchar Nigam Ltd. (In re Startec Global Communications Corp.)*, 292 B.R. 246, 251 (Bankr.D.Md.2003). Section 2 of the Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he effect of [the Act] ... is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Nevertheless, arbitration agreements are not to be enforced where "Congress, by separate statute, sets forth a conflicting framework for dispute resolution." *See Startec*, 292 B.R. at 251; *United States Lines, Inc. v. American S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir.1999) (holding that a Federal Arbi-

tration Act mandate may be overridden by a "contrary congressional command..." such as the mandates set forth in the Bankruptcy Code).

 Bankruptcy courts must undertake a two-step analysis when determining whether to enforce an arbitration provision. The first inquiry is to decide whether the court has discretion to refuse arbitration. *Startec*, 292 B.R. at 252 n. 13 (citing *Cibro Petroleum Prod., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 118 (S.D.N.Y.2001)); *In re U.S. Lines, Inc.*, 197 F.3d at 640–41. The second inquiry is to determine "whether arbitration of the proceeding would jeopardize Bankruptcy Code policy." *Startec*, 292 B.R. at 252 n. 13 (quoting *Winimo*, 270 B.R. at 118); *In re U.S. Lines, Inc.*, 197 F.3d at 640–41; *In re National Gypsum Co.*, 118 F.3d 1056, 1064, 1069 (5th Cir. 1997) (quoting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir.1989)). If the court has discretion to refuse arbitration, and arbitration would not be consistent with the purposes of the Bankruptcy Code, the court may refuse to enforce arbitration. In this case, both prongs of the test for the court to decline to enforce the arbitration provision for each count of the complaint are satisfied.

 With respect to the first inquiry, at a minimum,[3] discretion exists to refuse arbitration if the proceeding involves "core" matters. *Startec*, 292 B.R. at 252 n. 13 (citing *Winimo*, 270 B.R. at 118).

 In Count I, Plaintiff alleges that Defendants were negligent in their preparation of her Statement of Financial Af-

---

**3.** Under the first inquiry, a Bankruptcy Court "must examine 'whether the proceeding involves provisions of the [Bankruptcy] Code that so inherently conflict with arbitral resolu-

tion that' those provisions manifest 'Congressional intent to grant the bankruptcy courts discretion to refuse arbitration....'" *Winimo*, 270 B.R. at 118 (citation omitted).

fairs and Schedules.[4] Although the alleged negligence occurred pre-petition, the claim invokes the court's core jurisdiction because preparation of bankruptcy statements and schedules is integral to the administration of the estate under 28 U.S.C. § 157(b)(2)(A), and the disclosures therein impact debtor-creditor relationships under 28 U.S.C. § 157(b)(2)(O). For example, if a debtor neglects to disclose, or discloses inaccurately, the existence of certain creditors in the petition, those creditors may not receive proper notice of a debtor's bankruptcy case and may be excluded from any estate distributions. Likewise, if a debtor omits assets from the schedules or makes an erroneous exemption claim, the rights of creditors could be prejudiced significantly. Litigation that might spring from such errors could cause delays in the administration of a debtor's bankruptcy estate and impede the entry of a debtor's discharge. Further, this particular allegation of negligence involves the court's core jurisdiction because it implicates the court's ability to police professionals who provide services in connection with a debtor's bankruptcy case. *See*

*McDow v. We the People Forms & Serv. Ctrs., Inc. (In re Douglas)*, 304 B.R. 223, 232 (Bankr.D.Md.2003) (stating bankruptcy courts maintain core subject matter jurisdiction over "policing of professionals whom debtors pay to render service in connection with their cases."). For these reasons, the court has discretion to deny arbitration of Plaintiff's claim under Count I.

Counts II (unauthorized practice of law) and III (injunctive relief) also command the court's core jurisdiction. Count II is a core matter because it involves the court's power to regulate the activities of bankruptcy petition preparers under 11 U.S.C. § 110.[5] *See Douglas*, 304 B.R. at 231–32 ("By enacting [11 U.S.C. § 110], Congress unequivocally conferred upon the bankruptcy courts the power to enforce the strictures of the statute. Such power is well within the scope of the core jurisdiction of bankruptcy courts to hear and determine matters central to the administration of debtors' estates in bankruptcy, granted by Congress [under 28 U.S.C. § 157]."); *see also Taub v. Weber*, 366 F.3d 966 (9th Cir.2004); *In re Moore*, 283

---

**4.** Neither litigant has addressed the issues of who, as between Plaintiff and the Chapter 7 Trustee, has the right to maintain a cause of action against Defendants for negligent preparation of the bankruptcy petition, and who is entitled to recoup the damages (if any) if a judgment is entered in favor of Plaintiff. The court does not reach the resolution of those issues in the instant motion. Plaintiff's standing to maintain a cause of action under 11 U.S.C. § 110 (Counts II and III) is discussed in Part III, *infra*.

**5.** Section 110 establishes a set of requirements with which bankruptcy petition preparers must comply. Petition preparers must sign all documents they prepare and must include their name, address and social security number on those documents. *See* 11 U.S.C. § 110(b)(1), (c)(1). They must furnish debtors with a copy of all documents they prepare. *See* 11 U.S.C. § 110(d)(1). Within

ten days after the filing of a bankruptcy petition, the petition preparer must file a declaration with the court stating all compensation they received from the debtor in the twelve months preceding the filing. *See* 11 U.S.C. § 110(h)(1). These compliance requirements are designed to "create a paper trail to identify non-attorneys who prepare documents to be filed by bankruptcy debtors."

\*　　\*　　\*　　\*　　\*　　\*

Section 110 also contains certain conduct provisions. Bankruptcy petition preparers are prohibited from "executing any document on behalf of a debtor," [11 U.S.C.] 110(e)(1), from using the word "legal" or any related term in advertising, [11 U.S.C.] 110(f)(1), and from collecting court filing fees from debtors, [11 U.S.C.] 110(g)(1). *In re Guttierez*, 248 B.R. 287, 293 (Bankr. W.D.Tex.2000) (footnote omitted) (citation omitted).

B.R. 852, 857 (Bankr.E.D.N.C.2002) ("The petition is essential to the proper operation of the bankruptcy process, and all parties suffer if a petition is improperly prepared.... [B]ecause the petition and schedules are at the heart of the bankruptcy process, matters attendant to its preparation are 'core' proceedings."). Count III is a core matter because it invokes the court's authority to enjoin Defendants from violating the automatic stay in Plaintiff's case, i.e. by threatening to collect a pre-petition debt, and from filing further petitions with the court. *See Startec,* 292 B.R. at 254 ("[E]nforcement of the automatic stay is generally held to be the exclusive jurisdiction of the Bankruptcy Court.") (citing *Grant v. Cole (In re Grant),* 281 B.R. 721, 725 (Bankr.S.D.Ala. 2000)); *Demos v. Brown (In re Graves),* 279 B.R. 266, 271 (9th Cir. BAP 2002) ("[A Section] 110(j) injunction action is a core proceeding to be heard and determined by a bankruptcy judge under 28 U.S.C. § 157(b)(1).").

With respect to the second inquiry, Plaintiff's allegation concerning the negligent preparation of the bankruptcy petition necessarily requires an interpretation of the statement of financial affairs and the schedules—matters that are fundamental to bankruptcy law. This particular claim for negligence also affects the court's authority to regulate professionals hired by the Debtor to assist in the filing of the bankruptcy petition. The court concludes that arbitration of Plaintiff's claim in Count I is inconsistent with the Bankruptcy Code's goal to facilitate the efficient administration of bankruptcy estates, and to protect the rights of debtors and their creditors.

Arbitration of Counts II and III would undermine the underlying purpose that Congress intended when it enacted Section 110, namely, to address the absence of standards for, and the unregulated practices of, bankruptcy petition preparers. *See Douglas,* 304 B.R. 223, 236–37 n. 5 (discussing 140 Cong. Rec. H 10770 (Oct. 4, 1994)); *In re Alexander,* 284 B.R. 626, 630 (Bankr.N.D.Ohio 2002) ("Congress enacted [11 U.S.C.] § 110 ... to 'address the growing problem of bankruptcy [petition] preparers who abuse the system in the course of preparing documents for the debtors to file.' ") (quoting 2 *Collier on Bankruptcy,* ¶ 110.LH (Lawrence P. King ed., 15th ed. (rev.) 2001)); *In re Moffett,* 263 B.R. 805, 811–12 (Bankr.W.D.Ky.2001) (stating Section 110 was enacted "to address the proliferation of non-attorney bankruptcy petition preparers."); *Guttierez,* 248 B.R. at 292. Arbitration also would conflict with the court's power to enforce its own orders regarding the automatic stay. *See Startec,* 292 B.R. at 254 (citing *In re Grant,* 281 B.R. at 724–25). Accordingly, the court will refuse to enforce the arbitration agreement between the litigants.

### III.

Defendants' final contention is directed to Count II. They argue that this court lacks jurisdiction to determine whether they have engaged in the unlawful practice of law because the practice of law is regulated exclusively by the Court of Appeals of Maryland. This argument is flawed. There is a difference between whether a person should be licensed to practice in Maryland and determining whether unauthorized practice of law has occurred for purposes of enforcing federal law.

Before resolving the jurisdictional issue, however, the court would be remiss if it failed to point out that this adversary proceeding has been initiated by the Debtor, not the Chapter 7 Trustee or the United States Trustee. The questions that follow, and which neither party addresses, is whether a Chapter 7 debtor has the

right to prosecute his or her petition preparer under 11 U.S.C. § 110, and if the court awards damages, whether that debtor is entitled to collect them.

The short answer to these questions is yes. Under Section 110(I)(1), if the bankruptcy court finds that a petition preparer has violated Section 110(b), (c), (d), (e), (f), (g), or (h), or "commits any fraudulent, unfair, or deceptive act," the court "shall certify that fact to the district court, . . . ." The "debtor, trustee or a creditor" may then move the district court to require "the bankruptcy petition preparer to pay to the debtor": (1) the debtor's actual damages; (2) the greater of $ 2,000.00 or twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and (3) reasonable attorneys' fees and costs. 11 U.S.C. § 110(I)(1). See Moffett, 263 B.R. at 812; Kangarloo v. Arotionians (In re Kangarloo), 250 B.R. 115, 124 (Bankr.C.D.Ca. 2000). If it is the trustee or a creditor who moves successfully for damages on behalf of the debtor, the district court must order the petition preparer to pay $1,000.00 and reasonable attorneys' fees and costs to the movant. 11 U.S.C. § 110(I)(2). Likewise, Section 110(j)(1) permits the debtor, trustee, creditor, or United States Trustee to bring an action in the bankruptcy court to enjoin the petition preparer from "engaging in any conduct in violation of [Section 110] or from further acting as a bankruptcy petition preparer." 11 U.S.C. § 110(j)(1); In re Moore, 290 B.R. 287, 291–92 (Bankr.E.D.N.C.2003); In re Bush, 275 B.R. 69, 84 n. 27 (Bankr.D.Idaho 2002). If the injunction action is successful, the bankruptcy court must enter an order requiring the petition preparer to pay the movant's reasonable attorneys' fees and costs. 11 U.S.C. § 110(j)(3).

In this case, the Debtor seeks damages and injunctive relief against Defendants for their alleged unauthorized practice of law. Section 110(k) provides that "nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." 11 U.S.C. § 110(k). Several courts have found that the unauthorized practice of law constitutes a "fraudulent, unfair, or deceptive act" under Section 110(I)(1). See Scott v. United States Trustee (In re Doser), 292 B.R. 652, 659 (D.Idaho 2003); Bush, 275 B.R. at 83 n. 26; Moore, 283 B.R. at 857; In re Dunkle, 272 B.R. 450, 456 (Bankr.W.D.Pa.2002); Moffett, 263 B.R. at 812; In re Gomez, 259 B.R. 379, 386–88 (Bankr.D.Colo.2001); Guttierez, 248 B.R. at 294. Consequently, the Debtor, individually, may prosecute Defendants for their unauthorized practice of law and recover damages as well as injunctive relief under Section 110.

■ Returning to the Defendants' jurisdictional argument, the court does not disagree with the general proposition that the Court of Appeals regulates the unauthorized practice of law in Maryland. BOP section 10–601(a) provides that a person may not practice law in Maryland unless he or she is admitted to the Bar.[6] The Court of Appeals, in the exercise of its inherent and fundamental judicial powers, supervises, regulates and controls the admission and disbarment of lawyers in this state. Maryland State Bar Ass'n v.

---

6. The objective of the prohibition against unauthorized practice of law under BOP section 10–601 is to "protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical or irresponsible representation." Turkey Point Prop. Owners' Ass'n v. Anderson, 106 Md.App. 710, 666 A.2d 904, 908 (1995) (quoting In re Application of R.G.S., 312 Md. 626, 541 A.2d 977 (1988)).

*Boone,* 255 Md. 420, 258 A.2d 438, 443 (1969); *see also Lukas v. Bar Ass'n of Montgomery County, Inc.,* 35 Md.App. 442, 371 A.2d 669, 672 (1977) (stating that the determination of what constitutes the practice of law and the regulation of the practice and of practitioners in Maryland is a function of the Judicial Branch); Md. Rules. 16–701 through 16–781; M.R.P.C. 5.5, 8.4, and 8.5(b); R. Gov. Adm. to the Bar of Md. 1, *et seq.* Ultimately, the Court of Appeals also decides what activities constitute the practice of law in Maryland. *Attorney Grievance Comm'n of Maryland v. James,* 340 Md. 318, 666 A.2d 1246, 1248 (1995); *see, e.g., Lukas,* 371 A.2d at 673.

The authority of the Court of Appeals to regulate the practice of law in Maryland is not in dispute in this case; what is in dispute is whether Defendants have engaged in the unauthorized practice of law in violation of federal law, namely, 11 U.S.C. § 110, in preparing and filing Plaintiff's bankruptcy petition with this court, and whether this court may apply state law in deciding that issue.

Taking the latter issue first (i.e. whether this court can apply state law), this court is the proper forum to determine whether Defendants have violated Section 110. The unauthorized practice of law constitutes a fraudulent, unfair, or deceptive practice, and may subject to criminal penalty under 11 U.S.C. § 110(j)(2)(A)(i)(I), and may enjoined under 11 U.S.C. § 110(j)(2)(A)(i)(III). *See Moore,* 283 B.R. at 857. It is also a violation of State law. *See* discussion *infra;* 11 U.S.C. 110(k); Md.Code Ann., Bus. Occ. & Prof. § 10–601(a). The bottom line is this court has jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A) and (b)(2)(O).

The case of *In re Douglas, supra,* is instructive. There, the United States Trustee brought a similar suit against a bankruptcy petition preparer alleging, *inter alia,* that the preparer had engaged in the unauthorized practice of law. *Douglas,* 304 B.R. at 226–31. In rejecting the petition preparer's argument that the court lacked subject matter jurisdiction, the court explained:

The instant complaint is certainly a "matter concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). There can be no more fundamental exercise of core subject matter jurisdiction by the bankruptcy court than its policing of professionals whom debtors pay to render service in connection with their cases. When a complaint of misconduct is brought in the bankruptcy court against such a professional by the Office of the United States Trustee, which is statutorily charged with monitoring the bankruptcy system for the public good, it is obvious that this Court has the subject matter jurisdiction to hear and determine it. Any assertion to the contrary is nonsense.

*Id.* at 232. The movant also challenged the court's ability to discipline petition preparers. The court rejected that argument as well, stating:

[T]his Court finds precedential value in the cases cited by the plaintiff for the proposition by analogy that bankruptcy courts possess overarching power to regulate the conduct of professionals employed by debtors to assist them in the preparation and filing of bankruptcy petitions, whether or not these petition preparers ever appear at court. It is precisely because petition preparers do not come to court and often perform their services anonymously that the statute was enacted to bring them out of the shadows and into the full view and vicarious presence of the Court.

*Id.* at 237 n. 6.

■ This court also has the inherent power to regulate practice in cases before

it. The Bankruptcy Court is a unit of the District Court to which all bankruptcy cases have been referred. 11 U.S.C. §§ 151 and 157(a); U.S. D. Ct. Md. Loc. R. 402(f); U.S. Bankr.Ct. Md. Loc. R. 9010–3(a). Accordingly, this court's power to regulate practice is derived from the District Court's Local Rules 701, 703,[7] and 704,[8] which deal with attorney admission, assistance, and discipline. *See, e.g., Moffett,* 263 B.R. at 813 (stating that Federal Courts have inherent power to regulate practice in cases before them). It follows that the court may determine whether Defendants have engaged in the unauthorized practice of law.

In *Douglas* the court was not faced with issue of what law to apply in adjudicating a claim for the unauthorized practice of law, but the obstacle is not a difficult one to hurdle. What the United States Court of Appeals for the Fourth Circuit said in *Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co.),* 839 F.2d 203 (4th Cir.1988) is appropriate here.

The question of what choice of law rules should be applied by a bankruptcy court presents another wrinkle. Although bankruptcy cases involve federal statutes and federal questions, a bankruptcy court may, as here, face situations in which the applicable federal law incorporates matters which are the subject of state law. It is clear that a federal court in such cases must apply state law to the underlying substantive state law questions.

*Id.* at 205. This court is fully capable of applying Maryland law to determine whether Defendants' actions constitute the unauthorized practice of law. *See id.*

Courts in other jurisdictions also look to state law to determine whether bankruptcy petition preparers have engaged in the unauthorized practice of law. *See Taub,* 366 F.3d at 968; *Doser,* 292 B.R. at 659–60; *Moore,* 283 B.R. at 857; *Dunkle,* 272 B.R. at 455; *Alexander,* 284 B.R. at 631; *In re Haney,* 284 B.R. 841, 848 (Bankr. N.D.Ohio 2002); *In re Schneider,* 271 B.R. 761 (Bankr.D.Vt.2002); *Moffett,* 263 B.R. at 813; *Kangarloo,* 250 B.R. at 123; *In re Farness,* 244 B.R. 464, 470 (Bankr.D.Idaho 2000); *Gomez,* 259 B.R. at 386–88; *Guttierez,* 248 B.R. at 294; *United States Trustee v. Tank (In re Stacy),* 193 B.R. 31, 38 (Bankr.D.Or.1996); *In re Lyvers,* 179 B.R. 837, 840 (Bankr.W.D.Ky.1995); *In re Samuels,* 176 B.R. 616, 620 (Bankr. M.D.Fla.1994); *In re Bright,* 171 B.R. 799 (Bankr.E.D.Mich.1994); 2 *Collier on Bankruptcy,* ¶ 110.12[1], p. 110–20 (Lawrence P. King ed., 15th ed. (rev.) 2001) ("[S]ection 110 of the Bankruptcy Code does not preempt states from regulating, by their own rules on the unauthorized practice of law, those elements of the [petition] preparer's services that constitute unauthorized practice of law.") (footnote omitted). The approach taken in those cases makes sense and is consistent with the plain language of Section 110(k)'s acknowledgment that it does not permit activities that would be considered unauthorized practice of law under state law.

---

**7.** District Court Local Rule 703 provides:

Any attorney practicing before this Court or who has practiced before this Court in any way shall be deemed thereby by have conferred disciplinary jurisdiction upon the Court for any alleged misconduct of that attorney. To the extent appropriate, all Rules set forth herein as applicable to attorneys admitted to practice before the Court shall also be deemed applicable to and enforceable against any attorney participating in any manner in any proceeding in this Court, whether or not admitted to practice before the Court.

**8.** District Court Local Rule 704 states: "This Court shall apply the Rules of Professional Conduct as they have been adopted by the Maryland Court of Appeals."

*Moffett,* 263 B.R. at 813. Therefore, the court will apply Maryland law to determine whether Defendants have engaged in the unauthorized practice of law.

 Under Maryland law, the focus of the inquiry on whether an individual has engaged in the practice of law should "be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Attorney Grievance Comm'n v. Hallmon,* 343 Md. 390, 681 A.2d 510, 514 (1996) (quoting *In re Discipio,* 163 Ill.2d 515, 206 Ill.Dec. 654, 645 N.E.2d 906, 910 (1994)). "[T]he preparation of legal documents, their interpretation, the giving of legal advice, and the application of legal principles to problems of any complexity" constitutes the practice of law. *Lukas,* 371 A.2d at 673 (quoting F.T. vom Baur, *Administrative Agencies and Unauthorized Practice of Law,* 48 A.B.A.J. 715, 716 (1962)). The practice of law in Maryland also includes "drawing for others written instruments which require more than the most elementary knowledge of the law, or more than that which the ordinary or average laymen may be deemed to possess," in situations where "special legal knowledge and skill" are required. *Lukas,* 371 A.2d at 673 (quoting 111 A.L.R. 19, 24–25 (1937)).

 Here, Plaintiff alleges in Count II that Defendants prepared and interpreted her bankruptcy petition and gave her legal advice as to which Chapter to choose and as to the structure and content of her Schedules and Statement of Financial Affairs. She further alleges that Defendants counseled her on which exemptions to select. Her claim under Count II is also founded upon deceptive misconduct alleged to have been committed by Defendants that caused actual injury to her; that is, Defendants misrepresented their qualifications to give such guidance, and in so doing, injured Plaintiff by practicing law

without a license. The complaint seeks damages for past injury under Count II and injunctive relief to prevent Defendants from committing these practices in the future under Count III. Accepting as true all of the well-pleaded facts in the complaint and all of the inferences that may reasonably be drawn from them in a light most favorable to Plaintiff, the court finds that the complaint states sufficient facts for which, if proven, relief can be granted.

*Conclusion*

In summary, the exculpatory clauses found in the contracts between Plaintiff and Defendants do not shield Defendants from liability for their alleged negligence because the language in the clauses does not clearly state that they are not responsible for the consequences of their negligence. Alternatively, the claims are within the public interest exception to the enforceability of an exculpatory clause. The clauses are invalid as to Defendants' alleged unauthorized practice of law and violation of the automatic stay because they are inconsistent with Maryland statutory law and the Bankruptcy Code. As to mandatory arbitration, the bankruptcy court has discretion to decline to the enforce the arbitration provision for each Count in the complaint, and it will exercise that discretion, because the allegations against Defendants are core matters and arbitration of those matters would not be consistent with the purposes of the Bankruptcy Code. Finally, the court has inherent power to regulate the practice of professionals before it, including bankruptcy petition preparers. In that connection, the court relies on state law to determine whether bankruptcy petition preparers have engaged in the unauthorized practice of law. For these reasons, Defendants' motion to dismiss will be denied.

Therefore, upon consideration of Defendants' Motion to Dismiss and Plaintiff's Response, it is by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that Defendants' Motion to Dismiss is DENIED.